[S. F. No. 4962. Department Two.—June 21, 1909.]

J. F. PERKINS and ELIZABETH M. PERKINS (his wife), Respondents, v. SUNSET TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Appellant.

ACTION FOR NEGLIGENCE—IMPANELMENT OF JURY—SUPERVISORS' LIST—SPECIAL VENIRE.—In an action to recover damages for injuries sustained from the alleged negligence of the defendant, it was proper for the court in impaneling the jury for trial, instead of taking the names of the jurors appearing on the supervisors' list, to order the sheriff to summon a special venire, when there is nothing to indicate that the sheriff was disqualified.

ID.—ACQUAINTANCE OF JURORS WITH PLAINTIFFS—BIAS NOT IMPLIED.—The mere acquaintance of jurors summoned with the plaintiffs does not imply bias in their favor, any more than it raises a presumption of prejudice against them.

ID.—EXPERT EVIDENCE OF PHYSICIANS—HYPOTHETICAL QUESTIONS—WAIVER OF OBJECTION.—Though hypothetical questions asked of medical experts should be based upon the evidence, such questions need

not contain a synopsis of all the circumstances in evidence, and the examiner may assume a portion of the facts shown by the testimony as the basis of his hypothetical inquiry. Yet the objection that the hypothetical question is not sufficiently specific is waived, when no objection is made as to the form of the question nor as to its general or indefinite character.

ID.—OPINION EVIDENCE OF PHYSICIANS—RESULTS OF FALL INTO TELEPHONE HOLE.—Where it appeared that the married woman plaintiff was injured as the result of a fall into a hole dug by defendant in a sidewalk for a telephone pole, and left exposed and unguarded, the opinion evidence of physicians may be asked as to whether a person falling therein could receive injuries sufficient to cause the present condition of plaintiff, as to the character of her injuries, as to the professional care required to alleviate them, as to the recurrence of the comatose condition of one suffering from hemiplegia, and the probability of another stroke of paralysis and as to whether her condition could have been produced by a blow on the side of the head, there being evidence to that effect.

ID.—RESCISSION OF RELEASE OF CLAIM FOR DAMAGES—MENTAL UNSOUNDNESS—SUFFICIENCY OF EVIDENCE.—Where one of the objects of the action was to rescind a release of the claim for damages, which was also pleaded as a defense to the action, as having been made while the injured party was of unsound mind, evidence of her unsound mental condition, both before and after the time of the execution of the release, was admissible as bearing on her mental condition when the release was executed. *Held,* that the evidence is sufficient to justify the court in finding that she was then unsound in mind, and that her husband was then in such feeble condition as to justify the court in annuling the release upon restoration of the sum received therefor.

ID.—WIFE'S OWNERSHIP OF CLAIM.—The testimony of the wife that the amount of damages which she may recover in the action was her own separate property was admissible, since, as a general rule, ownership of property is a fact to which a witness may testify.

ID.—AGREEMENT BETWEEN HUSBAND AND WIFE.—A husband and wife may enter into a contract with each other by which the husband may relinquish to the wife all of his interest in the community property, both present and in expectancy, and thereby vest the same in the wife.

ID.—RELINQUISHMENT BY HUSBAND TO WIFE OF CAUSE OF ACTION FOR DAMAGES TO HER.—Though a cause of action for tort is not directly assignable, the husband may, after a cause of action for injury to the wife has arisen, relinquish to her all interest therein as community property, which makes the same her separate property.

ID.—EVIDENCE—RELIGIOUS BELIEF OF PLAINTIFF—HARMLESS ERROR.— The counsel for plaintiff improperly asked the wife "Are you a religious lady," but her reply, "I hope I am," could not prejudicially affect the jury.

ID.—DAMAGES NOT EXCESSIVE.—In view of the fearful consequences resulting to the injured plaintiff from the negligence of the defendant, it cannot be affirmed, as matter of law, that the verdict in her favor in the sum of twenty-five thousand dollars was excessive.

ID.—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.—The mere inattention of the plaintiff to a hole in the sidewalk left exposed and unguarded by defendant's negligence, is not contributory negligence as matter of law, and the question of contributory negligence was properly submitted to the jury as one of fact.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Pillsbury, Madison & Sutro, Thomas, Pemberton & Thomas, and Weldon & Held, for Appellant.

J. W. Preston, and Arthur J. Thatcher, for Respondents.

MELVIN, J.—Elizabeth M. Perkins, one of the plaintiffs who is the wife of the plaintiff J. F. Perkins, was injured by falling into a hole which had been dug by the servants of appellant for the reception of a telephone pole in a street in the city of Ukiah. She and her husband brought suit against the defendant corporation for damages and for the rescission of a certain contract of release which they had made with the Sunset Telephone and Telegraph Company. The judgment was in favor of plaintiffs upon both issues. The agreement was thereby declared void and was ordered canceled upon restoration to the defendant of the consideration. Damages in the sum of twenty-five thousand dollars were awarded plaintiffs. This is an appeal from the judgment and from the order denying defendant's motion for a new trial.

The questions with reference to the alleged release were, upon appellant's motion, determined by the court and the verdict for damages was rendered by a jury.

Appellant's first assignment of error relates to the selection of jurors from a special venire instead of from the list prepared according to statute by the board of supervisors. Our attention is called to the fact that seven of the jurors who tried the case resided at or near Ukiah where plaintiffs

lived and all but one member of the jury knew Perkins and his wife. This acquaintance, appellant contends, was of such nature that the jurors must have given unconsciously more weight to the testimony of plaintiffs than to that of other witnesses. This, it is asserted, compelled the defendant corporation to submit its cause to an unfair jury. There is no merit in this contention. Mere acquaintance of the jurors with a litigant does not imply bias by them in his favor any more than it raises a presumption of prejudice against him. Nor is there any impropriety in the court's refusal to draw a jury from the citizens whose names appeared on the supervisors' list rather than from talesmen summoned on a special venire. (*People* v. *Suesser*, 142 Cal. 359, [75 Pac. 1093].) It was not here suggested that the sheriff was in any way disqualified.

Appellant directs this court's attention to a number of alleged errors in the admission of evidence. These we will consider in detail. Doctor Bond was asked this question to which the following answer was given: "State whether or not, in your opinion, doctor, you think that a person falling into a hole could receive injuries sufficient to cause her present condition?" Answer. "I think it could." The objection to this question was that it "called for a conclusion in a matter of expert testimony." While the interrogatory was exceedingly broad and the question omitted specification of the size of the hole, the manner of the fall, the weight of the individual, and like details, there was no objection made to the question on the ground that it was not sufficiently specific or that it did not contain enough details to make it a fair hypothetical question in view of the evidence in the case. It is too well established to require extended argument that an expert surgeon may state generally the sort of agency, means, or instrument which may have produced a given injury; as for example, whether or not a wound was inflicted by a blunt or a cutting instrument, or whether or not an ascertained lesion was a gunshot wound. The above question was within this rule. (See *State* v. *Seymore*, 94 Iowa, 699, [63 N. W. 661], *Batten* v. *State*, 80 Ind. 394; *People* v. *Durrant*, 116 Cal. 179, [48 Pac. 75].)

Two of the physicians were asked if the condition of Mrs. Perkins could have been produced by a blow on the side of

the head. Objection was made to such inquiries on the ground that they were "mere speculation and mere probability" or "too speculative." These objections were properly overruled. No line of inquiry is more thoroughly within the scope of a legitimate examination of an expert surgeon than that relating to the probable cause of a physical injury. No objection was made to the form of the question nor to its general character. While it is true that a hypothetical question where allowable at all, must conform to the testimony (*Rowe* v. *Such*, 134 Cal. 576, [66 Pac. 862, 67 Pac. 760]), it is also the rule in California that such question need not necessarily contain a synopsis of all of the circumstances in evidence. The examiner may choose a portion of the facts shown by the testimony as a basis of his hypothetical inquiry (*People* v. *Hill*, 116 Cal. 567, [48 Pac. 711]). There was evidence that Mrs. Perkins had received a blow on the side of the head and this question was at least proper as one preliminary to a more minute inquiry regarding the subject under investigation. The following questions were propounded to Doctor Stout. "A person who is suffering from hemiplegia, caused by a clot on the brain or injuries to the right side of the brain, or either side of the brain, sometimes have a recurrence of the comatose condition, do they not?" "From your knowledge and experience as a practicing physician would you or not be surprised should Mrs. Perkins have another stroke of any kind?" To each question the objection was made that it was "immaterial and speculative." Doctor Bond was asked and gave the following answer to this question: "Well, in your opinion, according to medical authority and according to your own wide experience and observation, what is the usual per cent that survive the third stroke in this country?" Answer. "I think there are comparatively few that survive on account of the weakness of the arteries." The only objection to this query was "There was no evidence of a third stroke in this case." Counsel did not even interpose the time honored objection that the question was incompetent, irrelevant, and immaterial. The evident purpose of plaintiff in asking these questions was to determine the extent and probable result of Mrs. Perkins's injuries. It was held by this court in *Martin* v. *Southern Pacific Co.*, 130 Cal. 287, [62 Pac. 515], that the character of the injuries sustained,

as well as their probable duration and the professional care required for their alleviation, were proper subjects for the opinion of experts. The questions asked of Doctor Stout were clearly within the principle announced in that case. While the question put to Doctor Bond would, if standing alone, be considered erroneous perhaps, we cannot see how appellant could have been injured by it. The Doctor had testified without objection that after the second attack of paralysis a patient was more apt to die, but that he could not give the percentage of persons who survived a second seizure. He was then asked regarding the percentage of those who recover after a third stroke. In view of the range of the previous questions to which no objection was made, this last inquiry was but natural, though perhaps not entirely proper. At any rate his answer was so indefinite that no injury could have been wrought as against this defendant.

Mrs. Randall, an intimate acquaintance of Mrs. Perkins, gave her opinion regarding the latter's mental condition at the time of the signing of the release mentioned in the pleadings. She described the plight of Mrs. Perkins after the accident and before the date upon which the release was signed. It is not clear whether or not her testimony had reference also to a period subsequent to the execution of that instrument. It makes no difference whether or not her description of her friend's illness included some matters occurring after the release was signed, because it is proper in such an action as this to receive evidence with regard to a person's mental condition both before and after the time of the act involved in the investigation. (*Estate of Toomes*, 54 Cal. 516, [35 Am. Rep. 83]; *People* v. *March*, 6 Cal. 547; *People* v. *Willard*, 150 Cal. 556, [89 Pac. 124].) It is true, as appellant's counsel state, that "the only issue in this branch of the case was the soundness of mind of Mrs. Perkins at the time she executed the release on the 8th day of February, 1906," but one way to determine that question was to consider evidence of her mental condition before and after that date.

Witness Randall was permitted, over appellant's objection, to testify to a conversation with Mrs. Perkins in which the latter disclaimed any interest in the money to be derived from the telephone company, saying that "it was her property if she received it"; and Mrs. Perkins was allowed to state

while on the witness stand that the amount of damages which she expected to be paid by the telephone company was hers. We think that the objection to the question asked of Mrs. Randall should have been sustained and the motion to strike out the answer should have been granted, but in view of the fact that Mr. Perkins was permitted to testify with reference to this matter, the error was not vital if respondents' theory of the case is correct; and that question we will presently examine. While the answer of Mrs. Perkins that the claim against the company was her property was in a sense an expression of opinion, there is authority for the introduction of such evidence and sustaining such a question as the one propounded to her by her counsel. As a general rule ownership of property is a fact to which a witness may testify. (*Bunting* v. *Salz*, (Cal.) 22 Pac. 1133; *Kaltschmidt* v. *Weber*, 145 Cal. 598, [79 Pac. 272]; *Hardison* v. *Davis*, 131 Cal. 638, [63 Pac. 1005].)

Elizabeth M. Perkins was asked by her counsel "Are you a religious lady?" Objection that the question was immaterial was overruled and the witness answered: "I hope I am." The objection should have been sustained, but we fail to see how appellant could have been injured by the erroneous ruling. We cannot share the apprehension of appellant's counsel that her reply must have caused the jurors to put more confidence in her sworn statements because of the suggestion that she was a religious lady. Her answer was not positive, but even if it had been and had she proclaimed her piety, we cannot see how her mere profession of religious belief could have created an improper influence upon the minds of the jurors. Nearly all civilized people have some sort of religion and the discovery by a jury that a witness possesses such belief would not, we think, so far differentiate that individual from the rest of mankind as to give his or her statements peculiarly solemn weight with the jurors. Cases might arise in which evidence that a witness belonged to some certain religious sect might either increase or diminish the credit of the witness with some juror or jurors but we fail to see how the mere possession of convictions regarding religion could operate to create improper bias in the minds of jurors.

The court found, among other things, that for more than ten years there had been an agreement between J. F. Perkins

and his wife whereby it was mutually consented that all community property on hand or to be acquired by either should be and become the sole and separate property of Elizabeth M. Perkins; that said agreement was still in force and had been in effect since it was made; that Mr. Perkins had deeded all of the realty of the community to his wife in 1902 and that she had thereafter collected and retained all the rents, issues, and profits therefrom; that in 1903 he had by bill of sale transferred to her all title to a part of the personal property of the community; and that after the injury to Mrs. Perkins and prior to the execution of the agreement of February 8, 1906, with the telephone company, J. F. Perkins had relinquished to his co-plaintiff all his interest in the cause of action for damages. Appellant attacks these findings on the ground that the evidence is insufficient to support them, but they set forth substantially the facts deducible from the testimony of plaintiffs themselves and of other witnesses. Appellant calls attention to the fact that there is no evidence of an assignment by the husband of his interest in the cause of action and then cites authorities to the effect that a cause of action for tort is not assignable. Undoubtedly appellant is correct in its position that such cause of action generally cannot be assigned, but the point is not here involved. The findings are not that there was an *assignment* but that long before the cause of action arose Mr. Perkins relinquished his interest in the community property and that his act, after the injury to his wife, was one of relinquishment and not of assignment. Respondents contend that: 1. The cause of action was the separate property of the wife when it arose; and, 2. That in any event the agreement between the two spouses was sufficient to transmute the community property into separate property.

Under our law there can be no doubt that a husband and wife may enter into a contract with respect to their property whereby one may release to the other all interest, both present and in expectancy. (*Crum* v. *O'Rear,* 132 Ill. 443, [24 N. E. 956]; *In re Davis,* 106 Cal. 453, [39 Pac. 756]; *Von Glahn* v. *Brennan,* 81 Cal. 264, [22 Pac. 596]; *Wren* v. *Wren,* 100 Cal. 279, [38 Am. St. Rep. 287, 34 Pac. 775]; *Kaltschmidt* v. *Weber,* 145 Cal. 598, [79 Pac. 272].) In the case last cited the following language is used: "There can be no doubt

that the husband may make a gift of the community property
to the wife, and that the effect of such gift will be to trans-
mute it into her separate estate. The provision in section
172 of the Civil Code that he cannot make a gift of community
property unless the wife, in writing, consent thereto, is a
provision for her benefit and protection, and it has no applica-
tion to the case of a gift by the husband directly to the wife.
And so, also, he may, under sections 158 and 159 of the Civil
Code, contract with her by an agreement that her personal
earnings shall be her separate property, and this may apply to
future as well as past earnings, and the effect of such an agree-
ment will be to convert such earnings from the *status* of com-
munity property to that of separate property of the wife." It
will be seen by an examination of the authorities cited above
that the utmost freedom of contract exists in California between
husband and wife and that the courts will resort to circum-
stantial evidence furnished by the general conduct of the
spouses with reference to their property in determining the
existence or non-existence of a contract where the exact terms
of the alleged agreement have escaped the memory of one
or both of the parties to it. In the case at bar there was both
positive evidence and also testimony as to facts and circum-
stances tending to show that the contract, whereby the hus-
band remitted to his wife all his interest in that which would
ordinarily have been the community property, was, and had
been in existence for a long period of years. The findings
upon that subject were supported by the evidence. According
to the view we take of the matter it is not necessary to de-
termine whether or not a husband may assign to his wife his
interest in an action not arising out of a wrong to his own
person. It is a rule universally recognized that one who is
injured personally may not assign a claim growing out of
such tort but there is some authority to the effect that almost
every other kind of property is assignable. (*Rued* v. *Cooper*,
109 Cal. 693, [34 Pac. 98].) However, the court found here
not an assignment but a relinquishment of all the husband's
claim to the community property. If such remission as to
further accretions before the cause of action would operate
as a transmutation of the property into the wife's separate
estate, we see no reason why the same result could not be
attained by the same means after the cause of action came

into existence. It was therefore proper for the court to find with reference to the agreement which the plaintiffs made after the accident and before February 8, 1906.

The finding that Elizabeth M. Perkins was of unsound mind but not entirely without understanding on February 8, 1906, is attacked by appellant on the ground that it is not supported by the evidence; but we think that the finding which seems to have been made in view of the provisions of section 39 of the Civil Code is supported by the evidence of experts and of laymen. Dr. Stout testified that Mrs. Perkins was in a stuporous and comatose condition and was without sufficient mental capacity to transact ordinary business when he saw her on the fourth, fifth, sixth, and ninth days of February, 1906. Dr. Dickinson, whose observation of the patient covered a time both before and after the eighth day of February and who saw her on that day near the time when her signature was appended to the document which defendant offered as a release, testified that while she answered questions rationally she did so only by the words "yes" or "no." He said that it was difficult to secure answers from her at all and in his opinion she was not in a condition to transact business upon that day. Mrs. Randall gave her opinion that Mrs. Perkins was not of sound mind on February 8th and related the fact that the patient mistook her for a Mrs. Stickney. She also said that Mrs. Perkins was in a stupor on that day. Mrs. McCallum and Mrs. Scott both gave similar testimony. The evidence adduced from these witnesses, as well as from her son and her husband, sufficiently supports the finding upon the mental condition of Mrs. Perkins.

Appellant attacks the verdict as excessive and it therefore becomes necessary to examine the evidence upon that point. Dr. Bond testified that Mrs. Perkins's right side was at one time completely paralyzed but that at the time of the trial she could use her right foot a little. He stated that she was blind in her right eye and that her spine was so curved that it caused the ribs to contract the chest. He also said that the sight of her left eye was impaired. Dr. Dickinson's description was much the same except that he added some details as to hemorrhage from the lungs and stomach. He also told of the lady's good health prior to the accident. Dr. Stout's account of the physical condition of Mrs. Perkins was similar

to those of his professional brothers. Mrs. Perkins was fifty-seven years of age at the time of the trial. In the prevailing opinion in *Reeve* v. *Colusa Gas and Elec. Co.*, 152 Cal. 110, [92 Pac. 94], we find the following: "It is impossible adequately to describe the suffering and misery—past, present, and future—inflicted upon the plaintiff as a consequence of the injury. The verdict is large, the amount of damage was a question for the jury, subject to the supervision and correction of the trial court, and having been passed by the latter without disapproval, it is not for us to say, under the circumstances, that it is excessive." We think this language is thoroughly applicable to the case at bar, and we cannot say, as matter of law, that the verdict rendered was excessive.

Appellant's counsel criticise as erroneous one of the instructions upon the subject of contributory negligence. After reciting the averment in the answer that the injury was due to the contributory negligence of Mrs. Perkins, the instruction continues as follows: "I further instruct you that whether the signs, signals, warnings, barriers, lights and obstructions, if any, were sufficient under the conditions to make the said plaintiff guilty of contributory negligence is a question of fact for you to determine from the evidence; and it is also a question of fact for you to determine from the evidence whether or not there was at the time of the accident any sign, signal, light, warning, barrier, barricade or obstruction to protect the public from falling into and being precipitated into the said excavation." Appellant calls attention to the omission from this instruction of the element of respondent's possible carelessness and abstraction and complains that the jury must have inferred that, as matter of law, it was appellant's duty to maintain at the excavation some sign, signal, or light. Mere abstraction or lack of attention to the condition of the sidewalk by a pedestrian passing over it cannot be assigned as contributory negligence. Even intoxication does not constitute contributory negligence in such a case, for as Mr. Justice Heydenfeldt once wittily observed, " A drunken man is as much entitled to a safe street as a sober one and much more in need of it." (*Robinson* v. *Pioche*, 5 Cal. 461). Nor can this instruction be construed as one in which the jury must conclude that barriers, etc., must be maintained by one who leaves an excavation in a public street. In a prior instruc-

tion the jurors had been told that it was the duty of defendant to "place proper guards or barriers or lights" around any excavation or obstruction left by it, and in both prior and subsequent instructions the matter of contributory negligence was sufficiently explained to the jury.

It is conceded by respondent that ordinarily a mistake of fact concerning the extent of an injury is not sufficient to avoid a release fully, fairly, and understandingly executed; but here we are called upon to consider a finding that Perkins, a man enfeebled in mind and body, was ignorant of the character, nature, and extent of the injuries to his wife. The finding may be fairly interpreted as referring to the injuries as they existed at the time of the execution of the release and not to their extent as developed at a later period. In that view of the finding the rule with reference to a "speculative contract or transaction" as stated in *Colton* v. *Stanford*, 82 Cal. 389, [16 Am. St. Rep. 137, 23 Pac. 16], would have no just application, especially when we consider the enfeebled condition of the mind of J. F. Perkins as found by the court.

The judgment and order from which defendant appeals are sustained.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.