**HELVERING, Com'r of Internal Revenue, v. HICKMAN.**

No. 7333.

Circuit Court of Appeals, Ninth Circuit.

May 14, 1934.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and S. Dee Hanson, Sp. Assts. to Atty. Gen., for petitioner.

Lynden Bowring, of Los Angeles, Cal., for respondent.

Before WILBUR and GARRECHT, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The government appeals from a decision of the Board of Tax Appeals sustaining the contention of the respondent Howard C. Hickman that the earnings of his wife did not constitute a part of his taxable income for the year 1923, in view of the agreement between them made in 1906 to the effect that the earnings of the wife should thereafter be her separate property. The Board of Tax Appeals, on sufficient evidence, found the facts to be as follows:

"The petitioner and his wife, Bessie Barriscale Hickman, have been residents of California since their marriage in 1906.

"At the time of their marriage, and for some time prior thereto, both the petitioner and his wife were professional actors, earning their livelihood by appearances upon the stage. Shortly thereafter, the petitioner was engaged as an actor at the Alcazar Theatre, San Francisco, at a salary of $75 per week. The petitioner's wife did not appear upon the stage after her marriage until some time in 1907, when she was also engaged as an actress at the same theatre at a salary of $85 per week.

"At some time in 1907, the petitioner and his wife orally agreed that the earnings of each were to be and remain the sole and separate property of the spouse earning the same, free of any community right, claim, or interest of the other, and that each would pay his or her own professional expenses, etc. Since 1907 the petitioner and his wife have adhered to their agreement and each separately received, kept and disposed of the funds derived from their respective employments, maintaining separate bank accounts, making separate investments for their separate accounts, and paying their own professional bills and expenses from their separate earnings.

"None of the earnings of the petitioner's wife were ever turned over to or received by

him, nor did he ever in any way exercise or attempt to exercise any rights, dominion, or control over the same. During the taxable year 1923 Mrs. Hickman was employed as an actress by the Joe Hart Enterprises of New York City, under the name of Bessie Barriscale, and received from the latter for her professional services rendered in that taxable year the sum of $14,850, which was paid directly to her, deposited in her separate bank account, reported as income upon her separate income tax return for that year, and which was used and disposed of by her without any interference, dominion, or control on the part of the petitioner. The petitioner received no part of this sum which was earned by his wife and which was handled in accordance with their agreement as her separate property."

■ Upon these facts the Board held that the husband was not taxable for the income of the wife. The opinion of the Board states that upon the authority of U. S. v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285; Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; United States v. Malcolm, 282 U. S. 792, 51 S. Ct. 184, 75 L. Ed. 714, "regarding the taxability of income of spouses domiciled in California and in proceedings sufficient to sustain the existence of a prior agreement between the spouses that the earnings of either were to remain the separate property of the one whose labor produced the earnings, the Board has held that such earnings were not to be taxed to the husband as community property," citing A. B. C. Dohrmann v. Com'r, 19 B. T. A. 466; C. R. Davis v. Com'r, 20 B. T. A. 931; W. A. Roth v. Com'r, 22 B. T. A. 587; F. J. Carman v. Com'r, 25 B. T. A. 162.

There is no doubt that under the law of California the earnings of the wife under such circumstances became her separate property. This has been frequently decided by the Supreme Court of California. In Wren v. Wren, 100 Cal. 276, 34 P. 775, 776, 38 Am. St. Rep. 287, that court held as follows: "Section 158 of the Civil Code provides that 'either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property which either might if unmarried;' and section 159 of the same Code provides that a husband and wife may by contract alter their legal relations as to property; and the succeeding section makes the mutual consent of the parties thereto a sufficient consideration for such an agreement. Under these sections, there can be no doubt that a hus-

band and wife may agree between themselves, without any other consideration than their mutual consent, that money earned by the wife in performing any work or service which does not devolve upon her by reason of the marriage relation shall belong to her as her own, and, when money has been earned by the wife under such an understanding or agreement with the husband, it is her separate property, and she may maintain an action to recover the same. An agreement between husband and wife by which the husband relinquishes all claim to the earnings of the wife, is one which relates to the acquisition of property by the wife, and is an engagement or transaction respecting property, within the meaning of section 158 of the Civil Code, above cited."

In Kaltschmidt v. Weber, 145 Cal. 596, 79 P. 272, 274, the Supreme Court of California held: " * * * he (the husband) may, under sections 158, 159, Civ. Code, contract with her by an agreement that her personal earnings shall be her separate property, and this may apply to future as well as past earnings, and the effect of such an agreement will be to convert such earnings from the status of community property to that of separate property of the wife. Wren v. Wren, 100 Cal. 276, 34 P. 775, 38 Am. St. Rep. 287."

■ In Earl v. Commissioner, 30 F.(2d) 898, 899, this court recognized the decisions of the Supreme Court of California construing its Civil Code, § 158, as controlling in determining whether income derived from the earnings of the husband should be treated as the joint property of the husband and wife for income tax purposes in accordance with the terms of an agreement between them. In so holding this court said:

" * * * It is consequently the holding of the Supreme Court of California that an agreement between a husband and wife domiciled there, without any other consideration than their mutual consent, that the future earnings of the wife should be her separate property, is valid, and such earnings do not become community property. Wren v. Wren, 100 Cal. 276, 34 P. 775, 38 Am. St. Rep. 287; Cullen v. Bisbee, 168 Cal. 695, 144 P. 968; Kaltschmidt v. Weber, 145 Cal. 596, 79 P. 272. If, as thus seems to be the settled law of the state, * * * a husband and wife may legally agree by contract that the future earnings of the wife shall be her separate property, and by virtue of such agreement they do not become the property of the community, there is no sufficient rea-

son why they may not make a similar agreement with reference to the earnings of the husband, or, as here, that their joint earnings shall belong to them jointly and not otherwise.

"Under the California system there is no difference between the earnings of the wife and the earnings of the husband. They are each community property (Martin v. Southern Pacific, 130 Cal. 285, 62 P. 515), and an agreement of husband and wife that her future earnings may nevertheless be her separate property differs in no way in principle from an agreement that his earnings may be the joint property of both (Estate of Harris, 169 Cal. 725, 147 P. 967). We conclude, therefore, that the contract is valid and such as a husband and wife may legally make."

The contention of the government in that case was that there was an interval of time before the vesting of the earnings of the husband as joint property when they were community property, but this claim we held untenable. The Supreme Court reversed that decision in Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, notwithstanding the validity and effect of the contract between the spouses under the law of California upon the ground that the earnings of the husband were taxable to him as "income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid." Revenue Act of 1918, c. 18, §§ 210, 211, 212 (a), 213 (a), 40 Stat. 1057, 1062, 1064, 1065; same sections Revenue Act 1921, c. 136, 42 Stat. 227, 233, 237. Justice Holmes, speaking for the court, said: "It turns on the import and reasonable construction of the taxing act. There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."

The logic of this opinion would seem to lead to the conclusion that the earnings of the wife "from salary, wages or compensation for personal services" would be taxable to her whether or not by local law or by contract permitted by local law they were community property, and would certainly support the conclusion that where the husband and wife entered into a lawful agreement

that the "salary" of the wife should be and remain her separate property such income would be taxable to the wife and not to the husband, as the Board of Tax Appeals held in the case at bar and in other cases cited by them.

The whole matter of the taxation of income by the United States in states recognizing the community property system was again considered by the Supreme Court in Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 61, 75 L. Ed. 239, and companion cases. Goodell, Collector, v. Koch, 282 U. S. 118, 51 S. Ct. 62, 75 L. Ed. 247; Hopkins v. Bacon, 282 U. S. 122, 51 S. Ct. 62, 75 L. Ed. 249; Bender, Collector, v. Pfaff, 282 U. S. 127, 51 S. Ct. 64, 75 L. Ed. 252, decided in November, 1930. In these cases it was held that where the earnings of either husband or wife were owned by them respectively or by the community, it was to be taxed according to the ownership of the earnings and that the phrase "net income of every individual" used in the Revenue Act of 1926, §§ 210 (a) and 211 (a), 26 USCA §§ 951 note, 952 note, denoted ownership. The Supreme Court in Poe v. Seaborn, supra, distinguished that case from Lucas v. Earl, supra, as follows: "In the Earl Case a husband and wife contracted that any property they had or might thereafter acquire in any way, either by earnings (including salaries, fees, etc.), or any rights by contract or otherwise, 'shall be treated and considered, and hereby is declared to be received, held, taken, and owned by us as joint tenants. * * *' We held that assuming the validity of the contract under local law, it still remained true that the husband's professional fees, earned in years subsequent to the date of the contract, were his individual income, 'derived from salaries, wages, or compensation for personal service,' under sections 210, 211, 212 (a) and 213 of the Revenue Act of 1918 (40 Stat. 1062–1065). The very assignment in that case was bottomed on the fact that the earnings would be the husband's property, else there would have been nothing on which it could operate. That case presents quite a different question from this, because here, by law, the earnings are never the property of the husband, but that of the community."

Whether the Earl Case is entirely consistent with the later case of Poe v. Seaborn, supra, we need not inquire, for the later decision is controlling. It is distinctly held in the case of Poe v. Seaborn, supra, that if by law the earnings of the husband or wife are not community property the earnings should not be taxed as such. By the law of Cali-

fornia, as construed by her courts, the earnings of the wife never became community property if the husband and wife have agreed that they shall be and remain her separate property, hence, under the decision in Poe v. Seaborn, such earnings should not be taxed as income to the husband.

The government relies upon our decisions in Blair v. Roth, 22 F.(2d) 932, decided December, 1927, and Belcher v. Lucas, 39 F.(2d) 74, decided March 31, 1930. Both of these cases were decided before the decision of the Supreme Court in Poe v. Seaborn, supra, and of course, if inconsistent therewith, were overruled thereby. In Blair v. Roth, supra, the contract between the spouses was held by this court to be insufficient to constitute a portion of the income of the community the separate property of the wife. The agreement in the case of Belcher v. Lucas, supra, was held by us to be substantially the same as that in Blair v. Roth. In neither case was there a clear-cut agreement that the wife should have her own earnings as her separate property; in both cases there was a partnership agreement by which the earnings of both were joined in one fund to pay expenses of both and remainder only was to be owned equally. It was held in both cases that the earnings of the husband and of the wife became community property before the agreement became effective to make the balance after payment of expenses, separate property. In the case at bar, under the decisions of the Supreme Court of California, the earnings of the wife were her separate property as soon as received, under the law and the agreement thereunder.

The decision of the Board of Tax Appeals is affirmed.