## SPARKMAN v. COMMISSIONER OF IN- TERNAL REVENUE.

### No. 9313.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1940.

Edward L. Conroy and Don Conroy, both of Hollywood, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Louise Foster, and John A. Gage, Sp. Assts. to Atty Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Here for review are two decisions of the Board of Tax Appeals redetermining claimed deficiencies in respect of income taxes of petitioner, Edward A. Sparkman (also known as Ned A. Sparks), for 1934 and 1935. As to 1934, respondent, the Commissioner of Internal Revenue, determined that there was a deficiency of $562.-82. The Board decided that, instead of a deficiency, there was an overpayment of $115.52. Petitioner claims an overpayment of $10,295.11. As to 1935, respondent determined that there was a deficiency of $6,295.89. The Board decided that there was a deficiency of $5,902.43. Petitioner claims there was no deficiency.

Questions presented are (1) whether, as claimed by petitioner, salary earned and received by him after a property settlement with his wife, Mercedes Sparkman, on January 23, 1934, was community property and, therefore, taxable one-half to each spouse, or whether, as claimed by respondent, such salary was the separate property of petitioner and, therefore, taxable to him alone; and (2) whether, as claimed by petitioner, $3,000 of a total expenditure of $3,500 for artificial teeth was an ordinary and necessary business expense and, therefore, deductible from petitioner's gross income in computing his net income for 1935, or whether, as claimed by respondent, this was a personal expense and, therefore, not deductible. The Board decided both questions adversely to petitioner.

*First.* Petitioner and his wife were married in 1930 and were at all pertinent times domiciled in California. Petitioner is a motion picture actor and radio performer and, as such, earned and received

DENMAN, Circuit Judge, dissenting in part.

a salary in 1934 and 1935. Part of his 1934 salary was earned and received before January 23, 1934, part of it afterwards. On January 23, 1934, petitioner and his wife entered into a written agreement which recited that they desired, "once and for all time," to settle their respective property rights, and provided that petitioner should pay his wife $15,000 for her support and maintenance; that each of the parties should have as his or her "sole and separate property, free and clear of any claim or claims on the part of the other party," specified property then in his or her possession; and that "all future earnings or income of each of the parties" should be his or her separate property. The agreement was performed in accordance with its terms.

Thereafter, in a divorce action against petitioner, petitioner's wife obtained an interlocutory judgment on March 13, 1935, and a final judgment on April 17, 1936. The agreement of January 23, 1934, was not mentioned in either of those judgments, but, in a subsequent action by petitioner's wife against petitioner in a state court of California, it was held and adjudged that the agreement was valid and that, by reason thereof, all earnings of petitioner after January 23, 1934, were his separate property.

■ It is clear that so much of petitioner's 1934 salary as was earned and received by him before January 23, 1934, was community property in which petitioner and his wife had present, existing and equal interests (California Civil Code, §§ 161a to 164, 169, 687) [1] and was, therefore, taxable one-half to each spouse. United States v. Malcolm, 282 U.S. 792, 794, 51 S.Ct. 184, 75 L.Ed. 714. See, also, Poe v. Seaborn, 282 U.S. 101, 108-118, 51 S.Ct. 58, 75 L.Ed. 239; Goodell v. Koch, 282 U.S. 118, 120-122, 51 S.Ct. 62, 75 L.Ed. 247; Hopkins v. Bacon, 282 U.S. 122, 125-127, 51 S.Ct. 62, 75 L.Ed. 249; Bender v. Pfaff, 282 U.S. 127, 130-132, 51 S.Ct. 64, 75 L.Ed. 252. The Board so held and, of that holding, no complaint is made.

■ The agreement of January 23, 1934, could not and did not change the marital status of petitioner and his wife, but it could and did change the status of their property, including future earnings, from community property to separate property. California Civil Code, §§ 158-160;[2] Wren v. Wren, 100 Cal. 276, 279,

---

[1] California Civil Code, §§ 161a to 164, 169, 687:

"§ 161a. *Interests in community property.* The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband. * * *

"§ 162. *Separate property of the wife.* All property of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is her separate property. * * *

"§ 163. *Separate property of the husband.* All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property.

"§ 164. *Property acquired after marriage.* All other property acquired after marriage by either husband or wife, or both, including real property situated in this state, and personal property wherever situated, heretofore or hereafter acquired while domiciled elsewhere, which would not have been the separate property of either if acquired while domiciled in this state, is community property. * * * "

"§ 169. *Earnings of wife, when living separate, separate property.* The earnings and accumulations of the wife, and of her minor children living with her or in her custody, while she is living separate from her husband, are the separate property of the wife."

"§ 687. *Community property.* Community property is property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either."

[2] California Civil Code, §§ 158-160:

"§ 158. *Husband and wife may make contracts.* Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying * * * confidential relations with each other * * *.

"§ 159. *Husband and wife. Property relations.* A husband and wife cannot, by any contract with each other, alter their legal relations, except as to property, and except that they may agree, in writing, to an immediate separation, and may make provision for the support of either of them and of their children during such separation.

34 P. 775, 776, 38 Am.St.Rep. 287; In re Davis' Estate, 106 Cal. 453, 455, 39 P. 756, 757; Kaltschmidt v. Weber, 145 Cal. 596, 599, 79 P. 272, 274; Perkins v. Sunset Tel. & Tel. Co., 155 Cal. 712, 719, 103 P. 190, 193; Cullen v. Bisbee, 168 Cal. 695, 698, 144 P. 968, 969; Helvering v. Hickman, 9 Cir., 70 F.2d 985, 986; Van Every v. Commissioner, 9 Cir., 108 F.2d 650, 651. Accordingly, the Board held, and rightly so, that salary earned and received by petitioner after January 23, 1934, was his separate property and was, therefore, taxable to him alone. Helvering v. Hickman, supra; Van Every v. Commissioner, supra.

Petitioner argues that, though valid as between the parties, the agreement of January 23, 1934, should be disregarded in determining their income tax liability for 1934 and 1935. Similar arguments were considered and rejected in the Hickman and Van Every cases. We adhere to the views there expressed.

*Second.* In 1935 petitioner purchased for himself two sets of artificial upper teeth, paying therefor $3,500. In computing his net income for 1935, petitioner deducted $3,000 of the $3,500 as an ordinary and necessary business expense. Respondent, holding the expense was a personal one, disallowed the deduction and was sustained by the Board. This ruling is assigned as error.

Sections 23 and 24 of the Revenue Act of 1934, c. 277, 48 Stat. 688, 691,[3] provide:

"Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) *Expenses.* * * * All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * *

"Sec. 24. Items not deductible.

"(a) *General rule.* In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses * * *."

The Board found: "Petitioner's natural teeth had [prior to 1935] been replaced with an artificial upper denture. Petitioner had difficulty in articulation and detected a slight hiss which was objectionable and

perhaps fatal to his continued employment in his profession. For all other purposes his teeth were satisfactory. In order to correct this condition, petitioner [in 1935] had two sets of upper dentures made at a cost to him of $3,500. The new teeth eliminated the hiss and restored to petitioner perfect enunciation. Two sets of teeth were purchased to insure against delay in petitioner's work in the event one set was damaged or destroyed while a picture was being filmed."

There was no finding, nor any evidence warranting a finding, that the teeth purchased by petitioner in 1935 were used or intended to be used for business purposes only. As petitioner—who had the burden of proof—offered no evidence on this point, it must be assumed that the teeth were intended to be and were used, not only during business hours and for business purposes, but at other times and for other purposes as well. We conclude, as the Board did, that the $3,500 paid for the teeth was not an expense incurred in carrying on a trade or business, within the meaning of § 23(a), supra, but was a personal expense, within the meaning of § 24(a) (1), and that, consequently, no part thereof was deductible in computing petitioner's net income. Compare Bourne v. Commissioner, 4 Cir., 62 F.2d 648, 649.

The Board's opinion states: "The statute [§ 24] expressly disallows 'personal' expenses. It would be difficult to imagine anything more personal than a set of false teeth. Although the immediate suggestion that the purchase of the new upper dentures be made may have occurred in connection with [petitioner's] professional activity, the expenditure was nevertheless so purely personal in character as to deny it classification as a business expense." With this we agree.

Whether this personal expense was ordinary or extraordinary, necessary or unnecessary, we have no occasion to decide. For § 24(a) (1) prohibits the deduction of personal expenses "in any case." The prohibition applies to ordinary and necessary personal expenses, as well as to those which are extraordinary and unnecessary. Allowance of deductions from gross income in computing net income "depends upon legislative grace; and

"§ 160. *Consideration for agreement of separation.* The mutual consent of the parties is a sufficient consideration for

such an agreement as is mentioned in the last section."

[3] 26 U.S.C.A. Int.Rev.Code, §§ 23, 24.

only as there is clear provision therefor can any particular deduction be allowed." New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416. A fortiori, there can be no allowance of a deduction which by statute is expressly prohibited.

In Blackmer v. Commissioner, 2 Cir., 70 F.2d 255, 92 A.L.R. 982, cited by petitioner, the sums held deductible were expended for theater tickets, luncheons, dinners and suppers given by the taxpayer (an actor) to others for publicity purposes. Here the claimed expenditure was for artificial teeth purchased by petitioner for himself and, so far as the record shows, not given away. Obviously, the Blackmer case is not in point.

Decisions affirmed.

DENMAN, Circuit Judge (dissenting in part).

This is a concurrence in the preceding opinion, save as to the refusal to allow as an ordinary business expense the amount spent on the two hiss preventing dentures. Petitioner, whose taxable income principally is earned by the profession of acting in motion pictures and as a performer over the radio, claimed a deduction of $3,000 for two upper dentures specially planned and constructed to prevent a hissing sound in his speaking in the two functions of his profession.

The deficiency letter, pleaded in his petition to the Board of Tax Appeals, and admitted by the Commissioner's answer, made no contention that the claimed deduction for the dentures was incorrect in amount but held that it "is not considered an ordinary and necessary [expenditure] in carrying on a trade or business." Section 23 of the Revenue Act of 1934, c. 277, 48 Stat. 680.

At the hearing before the Board the evidence was uncontradicted that in actual use the dentures successfully eliminated the hissing which had interfered with taxpayer's performances and tended to lessen or destroy the income sought to be taxed. The teeth he had had were satisfactory save for the hiss. The fact that he paid $3,500 for those eliminating the hiss and claimed $3,000 of that amount for a business expense, leaving $500 for their use at other times, when he could have used his former satisfactory teeth, is not relevant in view of the fact that the amount of the deduction is not questioned.[1] The Board held as a matter of law that because such dentures, facilitating his professional activities and income, were "personal" in making such assistance, upheld the Commissioner in the following language: "The sum of $3,000, being part of an expenditure of $3,500 for two upper dentures claimed as a business expense, is disallowed. The statute expressly disallows 'personal' expenses. It would be difficult to imagine anything more personal

---

[1] Sparks uncontradicted testimony is: "Explaining deduction claimed in 1935 of $3,000 for teeth purchased from Dr. Charles G. Hartley, over a period of fifteen years I have constantly been in the hands of dentists, being afflicted with teeth that were not very good, I would say. It was necessary to constantly revamp them. Extractions made it necessary to rebuild certain portions of the mouth. At the time in question, my mouth was in such condition that the whole job had to be done, and at that time I detected a slight hiss, which would not do in my business. Therefore, in consulting the dentists available, it was determined on a certain definite piece of work in order to insure the future of the teeth, that two sets had to be built in case anything might happen to the other one. That work cost me $3500.00, of which we claim $3,000.00 exemption. After those teeth were built and installed, I was enabled to earn $172,000.-00. Had the teeth not been expertly made, there is a question in my mind if

I could have earned $10,000.00. It is very definitely a fact in my mind that I would have been quickly eliminated from my profession. My other teeth were all right. I could do perfectly with them, but as I have stated, I had a certain hiss when I would use the letter ess. You cannot hiss in the moving picture business. You must enunciate clearly, and when you don't, you don't work. The teeth I had were satisfactory, for every other purpose, except for my hiss. The two sets bought were upper dentures. The purpose of the two sets was insurance. As to what type of insurance,— the studios pay $4,000.00 a week. I feel it very much incumbent upon me to do everything I can to safeguard their interests. I thought perhaps I might drop one of the bridges in my mouth and destroy it. They certainly would not be able to wait for a dental job approximately six weeks. After I got the new teeth I did not hiss on the letter ess. My speech has been restored perfectly."

than a set of false teeth. Although the immediate suggestion that the purchase of the new upper dentures be made, may have occurred in connection with his professional activity, the expenditure was nevertheless so purely personal in character as to deny it classification as a business expense. Conceivably the presence of a hiss in his enunciation would seem just as objectionable in the speech of a preacher, a lecturer or any other person who depends on his voice in his business or profession as in the speech of an actor. The respondent is sustained."

It is the ordinary practice of actors to make alterations in the mouth for the more effective presentation of the characters in which they are cast. For aged parts teeth are blackened to make it appear there are none, cheeks are stuffed out by pads to fatten the face, throats are sprayed to eliminate hoarseness, and obstructions are fastened to teeth to give a comic lisp or other affectation of speech. Per contra is the classic account of Demosthenes who sought to overcome an obstruction in his speech and to clarify his enunciation by declaiming his orations on the seashore with a pebble in his mouth.

Nothing could be more "personal" in one sense of the term than all these customary aids to speech and appearance in the actors' profession. Expenditures are not to be disallowed as not a business expense just because the business is one of the exploitation of one's personal gifts. As well could it be said that expenditures for costumes, rouge, face paints and the like, all intimately personal, should not be allowed. The word "personal" as used in Section 24:

"(a) *General rule.* In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses; * * *." 26 U.S.C.A.Int.Rev. Code, § 24.
means personal as distinguished from the business expenditures of the preceding Section 23.

There is no merit in the suggestion that, because there is no evidence that an actor's expenditure for a hiss preventing device for his mouth has not been allowed before, it is not an "ordinary" expenditure. It is ordinary practice to propel a boat or run a factory by mechanical power. Was the expense of running the first gas engine and later the first diesel not deductible because a new technique of power was used? If such a principle be accepted, both the Commissioner and the taxpayer will never know the exact date when the expenditure became ordinary.

The deduction should be allowed.