ROBERT C. and MARTHA J. FRYER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fryer v. Commissioner
Docket No. 3305-71
United States Tax Court
T.C. Memo 1974-26; 1974 Tax Ct. Memo LEXIS 293; 33 T.C.M. (CCH) 122; T.C.M. (RIA) 74026; January 30, 1974, Filed. Robert C. Fryer, pro se.
Richard H. Gannon, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION.
SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1967 in the amount of $1,057.61.
The issues for decision are:
(1) Whether all except $900 of the amount of $4,300 paid to petitioner Martha J. Fryer by her former husband should be taxed to her as alimony, or should an additional $1,700 of the amount be excluded from her income as child support payments. 2 (2) Whether petitioner Robert C. Fryer is entitled to deduct in 1967 as ordinary and necessary business expenses $25 which he spent on shoeshines for shoes which he wore with his airline pilot uniform and the amount of $100.38 *294 which he spent for haircuts in that year.
FINDINGS OF FACTS
Some of the facts have been stipulated and are found accordingly.
Petitioners, husband and wife, resided at Gallows Bay, Christiansted, St. Croix, Virgin Islands, at the time they filed their petition in this case. They filed a joint Federal income tax return for the calendar year 1967. Petitioners were married on August 25, 1967.
Petitioner Martha J. Fryer (hereinafter referred to as Martha) had previously been married to James Collord (hereinafter referred to as James). Martha and James were married in 1950 and were divorced pursuant to a decree entered on June 27, 1964, by the Circuit Court of Marion County, Alabama, In Equity. Martha and James had two children, Patricia born in 1952, and Thomas born in 1959. The decree of the Circuit Court of Marion County, Alabama ratified and confirmed a separation agreement entered into between Martha and James on June 22, 1964, which agreement specified that the children were to reside with Martha and further provided: 3 4. The husband shall pay to the wife the sum of One Hundred Dollars (100.00) each week for the support and maintenance of the wife and children. In *295 the event of the remarriage of the wife, the amount shall be reduced to the sum of Fifty Dollars (50.00) per week. In the event of the reaching of the age of twenty-one (21) years, sooner emancipation, or sooner death of each respective child, the amount that the husband shall pay to the wife shall be reduced by the sum of Twenty-five Dollars ($25.00) per week in each respective instance; provided, however, that so long as either child is attending an institution of higher education, and continues to reside with the wife, and has not become emancipated, and has not reached the age of twenty-five (25) years, said reduction with respect to such child shall not take place.
The agreement also included provisions with respect to payment by James of medical expenses of the children and premiums on life insurance policies of which the children and Martha were separate beneficiaries.
Between January 1, 1967, and the date of her remarriage to Robert on August 25, 1967, Martha received the sum of $3,400 from her former husband, James, pursuant to the provisions of the divorce decree entered by the Circuit Court of Marion County, Alabama. Subsequent to August 25, 1967, and prior to January 1, 1968, Martha *296 received the sum of $900 from her former husband pursuant to that decree. 4 Robert is a commercial airline pilot. During 1967 he was employed as an airline captain by American Airlines. The regulations of American Airlines with respect to pilots' dress specified that pilots were to wear "low quartered oxford type black shoes properly shined, except during winter when jodphur [sic] type black boots may be worn." Robert during 1967 did not take the option of wearing the jodhpur type boots but wore the oxford type black shoes with a plain toe and very fine stitching comparable to military type shoes. Robert never wore these shoes except with his American Airlines uniform. Robert kept his shoes properly shined in accordance with the requirements of American Airlines and during 1967 expended $25 on shoeshines for his black oxford shoes that he wore only with his airlines uniform.
The Flight Manual of American Airlines provides with respect to appearance of crew members the following:
D. APPEARANCE AND UNIFORMS
1. Crewmen in uniform shall present a well groomed and clean appearance.
Hair shall be clean and present a neatly groomed appearance. In no way will the bulk or length *297 of the hair interfere with the proper wearing of American Airlines headgear. 5 Sideburns and moustaches shall be neatly trimmed and will not be of unusual nature and size. Beards or goatees are not permitted.
This provision in the American Airlines Flight Manual of October 13, 1972, is comparable to the provision in effect in 1967 except that the provision in the 1967 manual contained a somewhat more specific statement as to the type of haircut required for crewmen. Robert complied with the regulations of American Airlines as to well groomed appearance and haircuts. American Airlines strictly enforced its regulations as to the uniform and grooming of crew members and there have been isolated instances of temporary suspensions which have taken place for failure of a crew member to comply with these regulations.
Petitioners on their Federal income tax return for 1967 did not include in their taxable income any portion of $4,300 received by Martha from James in 1967. On March 28, 1969, they filed an amended return in which they included $1,700 of income in addition to the amount included on their original return with the explanation, "Alimony payment received by wife prior *298 to marriage in August 1967. In the amount of $1700.00." On their Federal income tax return petitioners deducted $429.77 under miscellaneous deductions with the explanation, "Uniforms (Pilot)." 6 Respondent in his notice of deficiency included in petitioners' taxable income the entire $4,300 received by Martha from James with the explanation that the amount constituted alimony. At the trial respondent conceded that the $900 received by Martha from James after her marriage to Robert on August 25, 1967, did not constitute alimony and was not includable in petitioners' income. Respondent in his notice of deficiency increased petitioners' income as reported by $266.27 with the explanation that it had been determined that only $163.50 of the amount of $429.77 claimed by petitioners as the cost of pilot's uniform was allowable.
Petitioners in their petition to this Court contend that $2,600 of the $4,300 received by Martha from James constituted child support, leaving in issue $1,700 of the amount received. Petitioners in their petition contest $200.10 of the disallowance by respondent of the deduction claimed for uniform expense, alleging that $41.15 was spent for a uniform coat, *299 $33.57 for uniform shirts, socks and miscellaneous, $25 for uniform shoeshines, and $100.38 for haircuts required by American Airlines as a condition for employment. 7 Respondent at the trial conceded that petitioners are entitled to deduct $74.72 for uniforms, leaving in issue only the $25 deduction for shoeshines and $100.38 for haircuts.
OPINION
Petitioners did not file a brief in this case. At the trial respondent pointed out that this Court had had before it the same issue with respect to payments by James to Martha for the year 1966 as is involved in the instant case. Martha W. C. Fryer, T.C. Memo. 1969-244, affirmed 434 F.2d 67 (C.A. 2, 1970). Petitioners at the trial and in the stipulation of facts conceded that the Martha, one of the petitioners in this case, is the same Martha W. Collord Fryer who was the petitioner in the case previously decided by this Court involving the year 1966 and that the only difference in the facts in this case and in the prior case is that during the year 1967 Robert and Martha were married, whereas Martha had been unmarried during the entire year 1966. Apparently petitioners consider that the fact that *300 they were married during the year 1967 changed the situation with respect to the payments received by Martha from James prior to the date of her remarriage. 8 Respondent has conceded that none of the payments received by Martha from James after she married Robert was alimony. There is no difference in Martha's situation with respect to the payments she received from James during the part of the year 1967 before she and Robert were married, and her situation with respect to these payments in 1966. We therefore hold that $3,400 of the $4,300 received by Martha from James in 1967 is includable in Martha's income for the same reason that we held the total payments received by Martha from James in 1966 to be includable in her income. In affirming our opinion the Court of Appeals for the Second Circuit pointed out that in 1966 Martha had received $5,200 from James pursuant to a separation agreement, and the issue before this Court had been whether $2,600 of that amount should have been excluded from her income as child support. The Second Circuit also stated (434 F.2d at 68):
Although the Tax Court had "little doubt" that the parties intended "to provide $50 per *301 week as alimony and $25 per week for the support of each of the two minor children," it held that the agreement failed to fix the latter amount with the specificity required by section 71(b) of the Internal Revenue Code. The Tax Court felt bound to reach this result by Commissioner v. Lester, 366 U.S. 299, 81 S. Ct. 1343, 6 L.Ed. 2d 306 (1961), which 9 held that for the section 71(b) exclusion from gross income to apply, the instrument must "specifically designate" or "fix" the amount or portion to be applied to child support. The court below distinguished Commissioner v. Gotthelf, 407 F.2d 491 (2d Cir.), cert. denied, 396 U.S. 828, 90 S. Ct. 78, 24 L.Ed. 2d 79 (1969), where there was a rider to the separation agreement which transformed the allocation implicit in the main agreement into the specific designation required by section 71(b).
We agree with the Tax Court that the agreement in this case [footnote omitted] does not meet the strict requirement of Lester, and that Gotthelf is distinguishable. Any reconsideration of Lester should come from the Supreme Court or Congress.
We therefore hold that the income *302 as shown by petitioners on their original return was understated by $3,400 because of their failure to include this amount of the $4,300 which Martha received from James in 1967 in their taxable income.
The issue presented here with respect to the $100.38 which Robert expended for haircuts in 1967 is similar to the issue in Richard Walter Drake, 52 T.C. 842, 844 (1969), in which we held that the cost of haircuts of an enlisted man in the United States Army which he was required to have at least every 2 weeks was a personal expense and not deductible. In holding that the cost of the taxpayer's haircuts was not deductible we stated in the Drake case: 10 Expenses for personal grooming are inherently personal in nature; e.g., in Sparkman v. Commissioner, 112 F.2d 774 (C.A. 9, 1940), the cost of dentures used to aid an actor's enunciation was not deductible, and in Paul Bakewell, Jr., supra, [23 T.C. 803 (1955)] the cost of a hearing aid used by a lawyer both in his trade or business and for personal purposes was not deductible as a business expense. The fact that the Army may have required such grooming does not make the expenses therefor any less personal. *303 The evidence showed that the Army's requirement was directed toward the maintenance by the petitioner of a high standard of personal appearance and not toward the accomplishment of the duties of his employment. In setting standards for personal grooming, the Army is not unique. Many employers, expressly or otherwise, establish standards to which their employees are expected to conform. Men are to be clean shaven and are often required to wear suits, ties, and clean shirts, and women are expected to be dressed attractively. To conform to these requirements, employees must make expenditures which would not be required if they were at home or not on the job. Nevertheless, such expenditures for general personal grooming are inherently personal in nature and cannot be considered as business expenses.
In our view the expenditures by Robert for haircuts were likewise personal expenses even though he was required by American Airlines to maintain a well groomed appearance and to keep his hair properly cut.
The question of whether petitioners are entitled to deduct the $25 which Robert expended for shoeshines 11 is a closer one. If his shoes are viewed as a part of his uniform, *304 then this $25 upkeep on his uniform is a deductible expense. Jerome Mortrud, 44 T.C. 208, 216 (1965). There have been numerous cases involving the deductibility of clothing worn only for business purposes. It has long been settled that the costs of uniforms which are required in a taxpayer's employment and which are not suitable for general and personal wear and not so worn are deductible in arriving at taxable net income, but where the item for which a deduction is claimed is one which might be used by some individual as ordinary dress and worn in lieu of other clothing, we must determine from the facts if in fact the item was so connected with the taxpayer's business as to be a proper deduction for a business expense. Betsy Lusk Yeomans, 30 T.C. 757, 767-768 (1958). One of the questions is, of course, whether in fact the item is worn by the taxpayer at any other time. If the purchase of the item is one which would be deductible as a business expense, then the upkeep on the item is likewise deductible. The facts here show that Robert did not wear his black military type shoes except when he was flying for American Airlines. In our view the 12 situation *305 here is properly comparable to that of the boots worn by the California Highway patrolman in Marcus O. Benson, 2 T.C. 12, affirmed 146 F.2d 191 (C.A. 9, 1944), for which we allowed a deduction. We view this as a factual question and on the basis of the facts in this record hold that Robert is entitled to deduct the $25 which he paid for shoeshines as a business expense for upkeep of his uniform.
Decision will be entered under Rule 155.