## BOLAND v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9588.

Circuit Court of Appeals, Ninth Circuit.

March 29, 1941.

J. W. Radil and R. M. Sims, Jr., both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. U. S. Atty. Gen., F. E. Youngman, J. Louis Monarch, and Harry Marselli, Sp. Assts. to Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

GARRECHT, Circuit Judge.

On or about January 10, 1929, petitioner, F. Eldred Boland, and his then spouse, Genevieve, both residents of the state of California, separated and began to live apart. February 28, 1929, they entered into a written agreement for her support and maintenance, the settling of their respective community interests, and the adjustment and settlement of their disputes and differences.

"For the purpose of providing for the permanent maintenance and support" of the wife "and in consideration of the release" by her "from all claims and demands which" she might have against petitioner for support and maintenance, petitioner assigned to her twenty-five per cent of his income for personal services, whether rendered individually or as a member of a partnership, and such additional portion of his income necessary to make the amount assigned equal to $500 a month. The taxpayer, a practicing attorney, agreed to notify any partnership of which he might thereafter become a member, of the agreement and assignment. He further agreed

to secure the assent of the partnership to the assignment and to obtain an agreement by the partnership to pay the income assigned directly to the wife. The agreement stated that it was the intent of the parties that the wife receive an average minimum of $500 a month throughout each calendar year. The assignment of income was to become inoperative upon remarriage of the wife.

The petition agreed that the community property (shares of stock, a parcel of real estate, and life insurance policies), the amounts payable to the wife from his income, and any other property in the possession of, or under the control of, the wife as of the date of the agreement, should be her separate property. Other important parts of this agreement are set out in a marginal note.[1]

The agreement of February 28, 1929, was modified on May 31, 1936, by reducing the minimum amount payable to the wife each month, from $500 to $250, and at the same time the partnership of Knight, Boland and Riordan paid to her the sum of $5,750. This latter agreement also provided that petitioner and his wife file separate income tax returns, each to include one half of the community income in his or her individual return, petitioner to reimburse the wife for amounts of tax paid by her under this arrangement in excess of the amount of tax she would have paid if she had not included one half of the community income in her gross income. It was further agreed that should this arrangement for tax returns be not allowable, the provision should be inoperative.

In 1934 petitioner earned $6,507.20, in 1935, $12,011.04, and in 1936, $17,967.83. During the calendar year 1936 the law firm of Knight, Boland and Riordan paid Genevieve L. Boland the sum of $5,750, as not-

[1] "Agreement, made this 28th day of February, 1929, by and between F. Eldred Boland, party of the first part, and Genevieve L. Boland, his wife, party of the second part:

" * * * the party of the first part * * * has agreed * * * to assign to said party of the second part a portion of his income as hereinafter referred to and provided in consideration of the party of the second part forever releasing and discharging the party of the first part of and from all claims, demands and charges that she may now or hereafter have for support or maintenance by virtue of the marriage relation between them * * *.

"The parties hereto also being desirous of settling their respective rights in and to the community property of the parties hereto now existing and of * * * fixing and determining the character of the property hereafter to be acquired by the parties hereto, and

" * * * each forever releasing and discharging any and all rights, interests, claims, demands and charges which either now has or may hereafter have by virtue of the marriage relation between them and in the property of the other, whether now owned or hereafter acquired.
* * *

" (4) The party of the first part covenants and agrees to and hereby does release and surrender any and all rights, interests, claims, demands and privileges to which he is now or may hereafter be entitled by virtue of the marriage relationship between the parties hereto, or otherwise, in and to any property, real or personal, which the party of the second part now owns or may hereafter acquire, including the property designated as community property in the preceding paragraph hereof, to the end that the party of the second part may acquire, possess, enjoy, convey, devise and bequeath the same with the same effect as if she were and always had been a feme sole.
* * *

"(6) The party of the second part covenants and agrees to and hereby does release and surrender any and all rights, interests, claims, demands and privileges to which she is now or may hereafter be entitled to as wife, widow or otherwise howsoever, in and to any property real or personal which the party of the first part now owns or may hereafter acquire, (excepting only her right to receive the portion of the income of the party of the first part referred to in paragraph (1) hereof, and her rights in and to the community property and other property described and referred to in paragraph (2) hereof) to the end that the party of the first part may acquire, possess, enjoy, convey, devise and bequeath the same with the same effect as if he were and always had been unmarried, and said party of the second part hereby agrees that the portion of the income of the party of the first part not hereinabove in paragraph (1) hereof assigned to the party of the second part and any proceeds from the investment or reinvestment of said portion of said income shall be and become the separate property of the party of the first part."

ed above, and the sum was charged to petitioner's account with the firm. The petitioner made all payments required under the agreements during the taxable years, and no others were demanded.

For the years 1934, 1935, 1936, the petitioner reported in his income tax returns one half of his share of the income derived from personal services as an attorney at law. The Commissioner, in arriving at the deficiencies for these years, included the entire amount of petitioner's earnings in his taxable income. The Board of Tax Appeals entered its decision in favor of the Commissioner (41 B.T.A. 930), hence this petition for review in behalf of the taxpayer.

The single question to be determined is whether the separation agreement extinguished the community character of petitioner's income and thereby converted his earnings for the tax years in question into separate property. The correct answer to this problem determines petitioner's income tax liability for said years 1934, 1935, and 1936.

■ In the absence of an agreement to the contrary, earnings during the taxable years 1934, 1935, and 1936, would have been community property under the law of California (Civil Code ·Calif. §§ 161a, 164), and each spouse entitled to report one half thereof in a separate return (United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714), and this applies whether or not the parties are living together (Brown v. Brown, 170 Cal. 1). 147 P. 1168. See Sparkman v. Commissioner of Internal Revenue, 9 Cir., 112 F.2d 774, 776. Under the law of California (Civil Code Calif. §§ 158, 159), recognized by this court (Van Every v. Commissioner, 9 Cir., 108 F.2d 650; Helvering v. Hickman, 9 Cir., 70 F.2d 985; cf. Black v. Commissioner, 9 Cir., 114 F.2d 355, 358), a husband and wife, living in California, may enter into an agreement with each other altering their legal relations as to property and change the character of property from community to separate property, or from separate to community, theretofore acquired, or thereafter to be acquired. 13 Cal.Jur. § 45, pp. 845-847; Cheney v. City & County of San Francisco, 7 Cal.2d 565, 569, 61 P.2d 754; Siberell v. Siberell, 214 Cal. 767, 770, 7 P.2d 1003; In re Davis' Estate, 106 Cal. 453, 455, 39 P. 756.

■ There is no doubt that the property settlement agreement entered into on the 28th of February, 1929, disposed of the community property theretofore acquired, and changed the status thereof to that of separate property of one or the other. To answer the question whether earnings of petitioner received subsequently thereto were changed to separate property by said agreement, or retained their character as community property, we must look to the agreement. The document provides in the preamble that——

"The parties * * * being desirous of settling * * * rights in and to the community property * * * now existing and * * * fixing and determining the character of the property hereafter to be acquired * * *
"* * * by each forever releasing * * * all rights, * * * which either now has or may hereafter have by virtue of the marriage relation between them and in the property of the other, whether now owned or hereafter acquired."

This evidences a fixed determination to strip any future income of its community character, but the operative parts of the agreement are also inconsistent with the concept of community property. For instance, the agreement provides that petitioner *assign* twenty-five per cent "of his income for personal services, * * * and such additional portion * * * as shall be necessary to make the amount hereby assigned equal to the minimum of Five Hundred Dollars ($500.00) per month * * *." Under the laws of California "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests * * *." Civil Code Calif. § 161a. The agreement contemplates payment of the $500 a month whether earned or not (cf. Burnet v. Whitehouse, 283 U.S. 148, 151, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534); the twenty-five per cent is certainly not a present, existing and *equal* interest. Van Every v. Commissioner, supra. Moreover, the contract includes payment to the wife for life, so long as she shall not remarry, even though there be a divorce, the community dissolved, and the husband marry another. Again, the term "or may hereafter acquire" appears in the surrender covenant applicable to each party. The agreement negatives any possibility of continuance of the community property relationship, and the provisions for support of the wife are in lieu of her right to share

in future earnings upon the basis of community property.

The Board of Tax Appeals reached the proper conclusion, and its decision is

Affirmed.