## SOMERVILLE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9857.

Circuit Court of Appeals, Ninth Circuit.

Nov. 28, 1941.

Edward L. Conroy and Don Conroy, both of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch, F. E. Youngman, and Edward First, Sp. Assts. to the Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

■ George J. and Gertrude Martha Somerville, while husband and wife, and residents of California entered into a property settlement agreement in writing on September 1, 1936. An interlocutory judgment of divorce between them was decreed September 28th of the same year, and a final divorce followed as of October 2, 1937. Under California law the marital status is not affected by the interlocutory decree but the court may without further proceedings enter the final decree at any time after the expiration of one year from the entry of the interlocutory judgment. In re Estate of Boeson, 201 Cal. 36, 255 P. 800.

■ If the settlement agreement is interpreted as providing that the husband's future earnings for the period of two years following the date of the agreement shall belong to him, as distinguished from the community, but not otherwise, the Commissioner of Internal Revenue and the Board of Tax Appeals were right in determining that the husband was legally bound to report all of his earnings up to the date of the final divorce decree for the purpose of federal income tax assessment. Hel-

[3] Allowances to McDonald and family for the 44 months ending August, 1935, paid by Cummings, were $85,568.52.

vering v. Hickman, 9 Cir., 70 F.2d 985; Van Every v. Commissioner, 9 Cir., 108 F.2d 650; Sparkman v. Commissioner, 9 Cir., 112 F.2d 774; Boland v. Commissioner, 9 Cir., 118 F.2d 622; Van Dyke v. Commissioner, 9 Cir., 120 F.2d 945.

The husband reported one-half thereof upon the theory that such earnings belonged to the community. See United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L. Ed. 714. The Commissioner assessed a deficiency which the Board of Tax Appeals thereafter approved and found due.

The inducement clauses of the agreement evince the intention of the parties to it to make it a definite and complete property settlement. It is therein stated that it is intended "to settle and forever adjust * * * all of their * * * present and future property rights, both as to the properties which either may claim to be community property and also as to the separate estate of each," * * * and it is later stated that the agreement is "as and for full satisfaction and settlement of any and all claim or claims of community property which either might or could make against the other * * *." And, consistent with this broad language, the inclusiveness of the settlement is borne out by the detailed operative clauses of the instrument. In the preamble to the operative clauses it is expressly asserted that the agreement is made while the parties are living apart and upon their understanding that they shall not and cannot again live together as husband and wife and in the operative part it is asserted "that each of the parties may for themselves, independently of the other, control or do business in all matters the same as though he or she were single".

With full understanding that mere separation nor yet the entry on an interlocutory decree of divorce (suit for divorce followed close upon the heels of the agreement) would not affect the community status of the husband's earnings they proceeded to provide in the agreement for the disposition of such earnings for the period of two years, without a doubt as an overall estimate of the time to elapse before a final divorce should put an end to this community interest.

In orderly sequence to the expressed intention that they were settling "their mutual and respective present and future property rights, both as to the properties which either may claim to be community property and also as to the separate estate of each * * *", their properties are detailed and their disposition provided for in the written contract. In this inventory of properties so disposed of the parties did not neglect the item of the husband's future earnings nor leave such item to general language. On the contrary they proceeded to detail the handling of such earnings consistent with the theory of their being included in the settlement and entirely inconsistently with the statutory right of the husband to have the management and control of community property. (A sufficient part of the agreement to show this is included in a marginal note). California Civil Code. § 161a states:

"(Interests in community property.) The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property."

It is not difficult to discern from the terms and conditions of the agreement that the husband's earnings (and it appears that he is a moving picture actor) were substantial and that one of the important interests so far as the wife was concerned was the management and control thereof. See our opinions in Boland v. Commissioner, 9 Cir., 118 F.2d 622, and Van Every v. Commissioner of Internal Revenue, 9 Cir., 108 F.2d 650.

To place a clear intention beyond the possibility of misunderstanding the parties rewrote their intentions immediately following the detail of the disposition of the husband's future earnings in the following language:

"It is expressly understood and agreed that the above defined and described one-half of the net income of the second party agreed herein to be payable to the first party by the second party for said two year period, and the other covenants, promises, conveyances and transfers provided for in this agreement, are hereby expressly agreed to be in full and final settlement of any claim or claims of any kind or nature, other than otherwise disposed of in this property settlement agreement, which either party might or could otherwise make against the other party, or the separate estate of the other party one against the other, whether in law or in equity or in probate; also as and for full satisfaction and settlement of

any and all claim or claims of community property which either might or could make against the other."

This appears to us as a specific agreement that the husband was to pay one-half of his net earnings, after they had been handled and accounted for as provided in the contract, in full settlement of any community interest of the wife therein. The mere fact that such net was to be divided 50/50 does not change the contractual nature of the act. The parties could have provided for division thereof in any other proportion or for no division or for the payment by the husband of twice his earnings, etcetera.

We conclude that the contract of settlement removes the future earnings of the husband for the period of time provided therein from the status of community property to that of property owned by the husband and that it was the legal duty of the husband to report such earnings in full as income to himself and that the assessment of a deficiency was proper.

It is said in the husband's opening brief: "In holding that the property settlement agreement changed the nature of petitioner's (husband's) earnings from community to separate property, the Board of Tax Appeals failed to follow the decisions of the appellate courts of the State of California in so far as those decisions deal with the construction of such agreements."

We have carefully reviewed all of the California cases cited by the husband and we think they lay down no rule contrary to the ordinary rules of construction of contracts. It goes without saying that courts should not construe a contract as surrendering any property right or as changing the status of property ownership unless it actually does so. In each cited California case it would be necessary to imply the waiver of a right from vague and general language in order to arrive at a result contrary to the conclusion reached therein.

The husband contends in his brief that our decision in Sherman v. Commissioner, 9 Cir., 76 F.2d 810, is decisive of the instant case in his favor but his reasoning is based upon his assumption that he is right upon the very question at issue, to-wit: Does the agreement change the future earnings of the husband to his individual property?

It is said in his brief: "Since she (referring to the wife in the instant case) did not alienate or transfer her community one-half interest, it is inescapable, under the holding of Sherman v. Commissioner, supra, that she is subject to the income tax imposed upon that income."

It has been seen that we do not agree with the assumption which is the basis of respondent's conclusion.

We set out in the margin [1] those parts of

[1] "Whereas unhappy differences have arisen between said parties * * * it is the desire and intent, finally and absolutely, of said parties, by this indenture, to settle and forever adjust, and have settled and forever adjusted between themselves, all of their mutual and respective present and future property rights, both as to the properties which either may claim to be community property, and also as to the separate estate of each, and it is their desire and intent to settle and adjust, finally and absolutely, by this indenture, any and all claim or claims for alimony, separate maintenance, counsel or attorney's fees, or costs of Court in any action that may be brought for a divorce, or any action that may now be pending, between said parties, or in any action at law or other litigation, or otherwise, which either of the parties hereto may or might hereafter make one against the other and

"Whereas it is further desired and agreed on the part of the parties hereto, finally and absolutely, to settle and adjust by this indenture all of their mutual and respective rights and obligations one to the other arising out of their marriage relation, and also to determine and settle their respective rights of inheritance one from the other; and

"Whereas the said parties hereto have, since the date of their marriage, acquired certain community property; and

"Whereas there is a minor child of the parties hereto, and it is their further desire and intent by this indenture to provide for the maintenance, care and custody of said minor child; and

*       *       *       *       *       *

"Now, therefore, for and in consideration of the premises and mutual covenants herein expressed by and between the said parties hereto, the party of the second part agrees to pay to the party of the first part, and the party of the first part agrees to accept, a sum equal to one-half of the net income received by the second party from whatsoever source other than from income received from investments made during said period and other than income received by reason of testate or intestate succession, for a period of two years next and consecutively following upon and from the date of the execution and sign-

the property settlement agreement specifically set out in the husband's brief and which the Commissioner agrees is all of the agreement necessary to an understanding of the issues of this case. We add, however, those parts specifically referring to the deductions to be made from the hus-

band's future earnings from which it significantly appears that the husband is to pay the income tax on the whole thereof and deduct the taxes paid from the gross income in determining the amount payable to the wife.

Affirmed.

---

ing of this property-settlement agreement, it being hereby mutually understood and agreed that for such purposes the term 'net income' in this instance and wherever used in this connection in this agreement is to be defined and arrived at by deducting from the gross income of the second party received from the sources indicated above during said period of two years, each and all of the following items to-wit:—

"a. Agent's and/or agents' commission and/or commissions paid or payable by the second party during the said period of two years, or payable thereafter, upon some and/or all of the gross income and/or net income of the second party during said two years from the date of the execution of this agreement, said commission and/or commissions not to exceed ten per centum (10%) of said gross income and/or net income; and

"b. Income tax assessments and/or payments assessed, due paid or payable anywhere upon the gross income and/or upon the net income, as the case and/or cases may be, of the second party during said period of two years from the date of the execution and signing of this agreement, whether due or payable during or after said period of two years from the date of the execution and signing of this agreement; * * * "

* * * * * *

"It is expressly understood and agreed that the above defined and described one-half of the net income of the second party agreed herein to be payable to the first party by the second party for said two year period, and the other covenants, promises, conveyances and transfers provided for in this agreement, are hereby expressly agreed to be in full and final settlement of any claim or claims of any kind or nature, other than otherwise disposed of in this property settlement, which either party might or could otherwise make against the other party, or the separate estate of the other party, one against the other, whether in law or in

equity or in probate; also as and for full satisfaction of settlement of any and all claim or claims of community property which either might or could make against the other, and also as and for a full and final settlement for separate maintenance of either party hereto, and a full and final settlement of any claim or claims which either might or could otherwise make for alimony, counsel or attorney's fees, or costs, or otherwise in any action for divorce now pending or that may be brought by either party hereto, or litigation which may hereafter arise between said parties, and is a full and final settlement of any and all future claim and/or claims that the first party or the second party might otherwise assert or make, one against the other, of whatsoever kind or nature, whether in law and/or in equity and/or in probate.

* * * * * *

"XVII. It is further mutually understood and agreed that each of the parties may for themselves, independently of the other, control or do business in all matters the same as though he or she were single.

"XVIII. It is further understood and agreed that in making this final settlement of property rights that each of the parties hereto waives, relinquishes and forever surrenders all claim or claims of every kind or nature which she or he has or might hereafter acquire in or against the property of the other now held or hereafter acquired, including the rights of inheritance in case of death intestate or testate, which right each hereby expressly waives in favor of the heirs of the other.

"XIX. It is further mutually understood and agreed that each of the parties hereto, their respective heirs, executors, administrators or assigns, shall, at any and all times, execute any paper that may be necessary to be executed for the purpose of giving full force and effect to these presents and to the covenants, provisions and agreements herein contained."