# O'BRYAN v. COMMISSIONER OF INTERNAL REVENUE.

## No. 10767.

Circuit Court of Appeals, Ninth Circuit.

March 14, 1945.

Eli Freed and George H. Strachan, both of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen Carloss, Leonard Sarner, and John Costelloe, Sp. Assts. to Atty. Gen., for respondent.

Before GARRECHT, MATHEWS and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The Tax Court determined a deficiency in income tax against taxpayer for the years 1936, 1937, 1938, and 1939 on the theory that his earnings subsequent to a separation agreement between him and his wife were his separate property and wholly taxable to him rather than community property and taxable one-half to each spouse. Taxpayer petitions for a review of the Tax Court decision.

Taxpayer was married in 1919. Later, at a time when he and his wife were living in New York, they separated. In 1932 he became domiciled in California, where he has resided ever since. His wife has never lived in California.

Husband and wife entered into a "Separation Agreement" in 1935 or 1936 (the date is not disputed herein). The document opens with two recitals to the effect that the parties have been living separate and

apart and that the husband wishes to provide for the maintenance and support of his wife during her lifetime. There follows the paragraph: "1. The parties shall live separate and apart and each be free from interference, authority and control by the other as fully as if he or she were sole and unmarried, and each may conduct, carry on and engage in any employment, business or trade which to him or her shall seem advisable for his or her own, sole or separate use and benefit without and free from any control, restraint or interference, direct or indirect, by the other party in all respects as if each were unmarried."

The instrument further provides that certain personal property should be the wife's separate property. It contains the husband's promise to pay his wife for her maintenance and support $150 each month during the period of their joint lives and to pay any taxes levied against the payments, to settle all bills contracted by her prior to July 1, 1935, and to keep effective a certain existing and identified policy insuring his life which policy had been irrevocably assigned to his wife during her lifetime. It contains the wife's promise to refrain from contracting thereafter any debts for which the husband would be liable and to keep her husband indemnified from all debts incurred by her. Both parties therein agree that the separation agreement may be made a part of any judgment or decree wherein the wife's support may be affected. The document concludes with a declaration that it contains the entire agreement between the parties thereto.

During the four years herein involved taxpayer sent his wife considerably more than the $150 a month agreed upon. The additional funds helped her to care for invalid relatives and to make repairs upon their home.

There is evidence that the wife twice, in 1937 and in 1940, refused to sign a contract completely settling the rights of both husband and wife in their community property. Finally, in 1942, after a suit for divorce had been filed, the parties entered into a "Property Settlement Agreement," in which they expressed their intention "to settle and adjust forever all of their community and other property rights." The husband agreed to pay his wife $13,500 as her share of the community property which she had claimed. Property standing in the name of or possessed by either party was designated as that party's separate property. Certain items were specifically mentioned as being the separate property of one or the other. Definite statements whereby each party waived all claim to past, present, and future property of the other were included. There appears also the assertion that "the certain separation agreement heretofore executed by the parties hereto be, and the same is, supplanted by these presents." The "Property Settlement Agreement" was approved in an interlocutory decree of divorce granted taxpayer on October 10, 1942.

For each of the years 1936, 1937, 1938, and 1939 taxpayer treated his income as community property and filed one income tax return in his own name and one in his wife's name. Each of his returns indicates that the same amount of gross income as that reported by him was also reported on a separate return filed on behalf of his wife. She was not aware of the filing of returns in her name, nor did she know the amounts of her husband's income.    -

Additional taxes for all four years were assessed against taxpayer by the Commissioner of Internal Revenue on the ground that taxpayer's earnings were his separate property. With respect to the years 1936 and 1937 the assessments were made more than three but less than five years after the returns were filed.

■ Under the law of California a husband's earnings are community property, Civil Code Calif. §§ 161a, 164, one-half of which each spouse may report in separate income tax returns. United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714. The status of the property is the same although husband and wife are living apart and although she has never lived in California, Commissioner of Internal Revenue v. Cavanagh, 9 Cir., 1942, 125 F.2d 366. However, California law, Civil Code Calif. §§ 158, 159, permits a husband and wife by their contract to change the character of property thereafter acquired from community to separate, and such an agreement has been held effective to alter the nature of the property for income tax purposes. Van Dyke v. Commissioner of Internal Revenue, 9 Cir., 1941, 120 F.2d 945, 947; Boland v. Commissioner of Internal Revenue, 9 Cir., 1941, 118 F.2d 622, 624; Sparkman v. Commissioner of Internal Revenue, 9 Cir., 1940, 112 F.2d 774, 777; Van Every v. Commissioner, of Internal Revenue, 9 Cir., 1940, 108 F.2d 650, 652; Helvering v. Hickman, 9 Cir., 1934, 70 F.2d 985, 986.

■ The issue herein, then, is whether the "Separation Agreement" between taxpayer and his wife transformed the husband's earnings for the years 1936, 1937, 1938, and 1939 into his separate property.

The "Separation Agreement" did not completely adjust all property rights as between the husband and wife; it made no attempt to do so. However, we agree with the Tax Court that it had the effect of extinguishing the community character of the husband's future earnings. Paragraph "1" of that agreement is inconsistent with a continuing community ownership of the husband's earnings. It does not specifically declare the separate property status of future earnings, but no other status is reasonable in view of the provision that each spouse may engage in any employment or business for his separate use free from any "control, restraint or interference" by the other "as if each were unmarried." Earnings of an unmarried person could only be his separate property and taxable to him alone.

■ The document provides for the maintenance and support of the wife for life. The wife's right under the agreement between the spouses to fixed payments during her husband's life and to insurance payments after his death are in no sense analogous to her "present, existing and equal" interest in community property under § 161a of the Civil Code of California. Instead, new rights in her husband's income arise from the terms of the "Separation Agreement" and take the place of the community property rights formerly hers by operation of law. Boland v. Commissioner of Internal Revenue, 9 Cir., 1941, 118 F.2d 622, 624.

■■ Taxpayer contends that in order to construe a contract as waiving a property right, there should be definite language to that effect. Somerville v. Commissioner of Internal Revenue, 9 Cir., 1941, 123 F.2d 975, 977. He cites Federal Surety Co. v. A. Bentley & Sons Co., 6 Cir., 1931, 51 F.2d 24, 78 A.L.R. 1041 and Pressed Steel Car Co. v. Union Pac. R. Co., 2 Cir., 1924, 297 F. 788, in support of his argument that where there is uncertainty as to the intentions of the parties, a court should look to their subsequent acts in determining the effect of their contract. The principles recited by taxpayer are not persuasive as they are not applicable to the "Separation Agreement," which is neither indefinite nor ambiguous. Answering still another contention of the taxpayer, we do not think the terms of the 1942 "Property Settlement Agreement" in any way contradictory to our interpretation of the earlier "Separation Agreement."

■ The Tax Court correctly held the five-year limitation period of § 275(c), Internal Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 919, applicable to the taxes for the years 1936 and 1937 rather than the three-year period of § 275(a). Subsection (a) sets forth the general rule that income taxes shall be assessed within three years after the filing of a return. Subsection (c) provides an exception and permits assessment within five years after the filing of a return "if the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return."

In the instant case deficiencies for the years 1936 and 1937 were assessed more than three but less than five years after the returns were filed, and taxpayer claims that such additional assessments were barred by the terms of subsection (a). The tax returns for both years showed the total amounts of taxpayer's earnings and expenses from his business and, adjacent thereto, half those sums. The difference between the earnings and expenses was on each return carried over only as the difference between the smaller figures (i. e. the difference between half the earnings and half the expenses). Both returns showed that a separate return had been filed in the wife's name at the San Francisco Collector's office. The 1937 return stated that it was a "Community Return." Taxpayer argues that even though he allocated to his wife 50% of his total income and thereby understated his gross income by more than 25%, there was no omission of gross income under the statute since the full amount of his income appeared on the face of the returns and since the returns indicated the allocation of income to his wife and the filing of separate returns in her name.

■■ The mere appearance of the total amount of gross income somewhere on the face of an income tax return is not sufficient to prevent an omission within the terms of § 275(c). The government is not required to search carefully throughout a tax return to ascertain some fact which will put it on notice of error. It is apparent

from the pertinent legislative history that care and good faith on the part of a taxpayer will not prevent the applicability of subsection (c). Ewald v. Commissioner of Internal Revenue, 6 Cir., 1944, 141 F.2d 750, 753. To satisfy the terms of the section, the figure which represents gross income and from which net income is derived must not be understated by an amount in excess of 25 per cent of the figure. In the instant case gross income was shown as only half the correct amount. Therefore, the limitation period for assessing deficiencies was determined by § 275(c). Ketcham v. Commissioner of Internal Revenue, 2 Cir., 1944, 142 F.2d 996, 997; Reis v. Commissioner of Internal Revenue, 6 Cir., 1944, 142 F.2d 900, 903; Foster's Estate v. Commissioner of Internal Revenue, 5 Cir., 1942, 131 F.2d 405, 406.

The decision of the Tax Court is affirmed.