ESTATE OF JOHN IVERSON, DECEASED, MARDRID DAVISON AND GLADYS SORENSEN, CO-EXECUTRICES, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 48050-48054.    Filed February 15, 1957.

*Joseph A. Maun, Esq., William R. Busch, Esq.,* and *John Marriott Kline, Esq.,* for the petitioners.
*David Karsted, Esq.,* for the respondent.

---

---

[1] Proceedings of the following petitioners are consolidated herewith: Edward Davison and Mardrid Reite Davison, Docket No. 48051; Mardrid Reite Davison, Docket No. 48052; Estate of John Iverson, Deceased, Mardrid Davison and Gladys Sorensen, Co-Executrices, and Alvilda Iverson, Docket No. 48053; and Alvilda Iverson, Docket No. 48054.

BRUCE, *Judge:* Respondent determined deficiencies in the income tax of petitioners as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 48050 | John Iverson | 1947 | $48, 821. 54 |
| 48051 | Edward and Mardrid Reite Davison | 1949 | 1, 039. 88 |
| 48052 | Mardrid Reite Davison | 1947 | 14, 637. 84 |
| | | 1948 | 3, 271. 10 |
| 48053 | John and Alvilda Iverson | 1948 | 21, 378. 58 |
| 48054 | Alvilda Iverson | 1947 | 22, 220. 99 |

By amended answers to the petitions filed therein, respondent claimed additional deficiencies as follows:

| Docket No. | Year | Increase in deficiency | Total deficiency |
|---|---|---|---|
| 48051 | 1949 | $93. 80 | $1, 133. 68 |
| 48052 | 1948 | 401. 28 | 3, 672. 38 |
| 48053 | 1948 | 2, 369. 30 | 23, 747. 88 |

With respect to petitioners John and Alvilda Iverson, Docket No. 48053, respondent also determined that there was an overassessment in petitioners' income tax for the year 1949 in the amount of $8,032.52.

The parties have agreed that no issue is presented for determination by the Court with respect to the deficiency determined against Edward and Mardrid Reite Davison for the year 1949, Docket No. 48051, and that certain adjustments which are covered by the stipulated facts may be reflected in a computation under Rule 50.

All of the issues involved in these consolidated proceedings have been disposed of by stipulation except the question whether petitioners have omitted gross income in excess of 25 per cent of the gross income stated in their returns for 1947 and 1948 and have thereby made applicable the 5-year period of limitations provided in section 275 (c), Internal Revenue Code of 1939.

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

At all times material herein, John and Alvilda Iverson were husband and wife residing in Minot, North Dakota. For the year 1947 each filed a separate individual income tax return with the collector of internal revenue for the district of North Dakota. For the year 1948 John and Alvilda filed a joint return with the collector for the same district. Mardrid Reite Davison, Alvilda's daughter by a former marriage, filed individual income tax returns for the years 1947

and 1948 with the collector of internal revenue for the district of North Dakota. For the year 1949 Mardrid and her husband, Edward Davison, filed a joint income tax return with the collector of internal revenue for the district of Montana.

During the years 1947 and 1948 John Iverson, Alvilda Iverson, and Mardrid Reite Davison owned interests in the following partnerships engaged in the wholesale and retail selling of electrical supplies and fixtures:

| Partner | Mandan Electrical Supply, Mandan, North Dakota | Maytag Electric Co., Glasgow, Montana | Maytag Electric Co., Minot, North Dakota |
|---|---|---|---|
| | Per cent | Per cent | Per cent |
| John Iverson | 50 | 50 | 33⅓ |
| Alvilda Iverson | 50 | | 33⅓ |
| Mardrid Davison | | 50 | 33⅓ |

In addition, during the same years, John Iverson operated with O. G. Aal the Maytag Electric Company located at Williston, North Dakota, which was engaged in the same business. For the years 1947, 1948, and 1949, each of the businesses filed a partnership return, Form 1065, with the collector of internal revenue for the district of North Dakota. For the years involved each of the partnerships kept its books and records on an accrual basis of accounting.

John Iverson did most of the directing of all of the stores, but each store had a general manager who supervised the employees and the buying of merchandise. Neither Alvilda Iverson nor Mardrid Reite Davison actively participated in the supervision or management of any of the stores.

Each of the stores handled Maytag and Philco products such as washing machines, refrigerators, and radios, as well as other types of appliances, fixtures, and electric wiring supplies. Each store also had a repair shop and did repair work, including adjustments on new equipment, repairs on appliances sold under a manufacturer's warranty, repairs on trade-ins, and general repairs on appliances brought in by customers for servicing.

Records of the transactions carried on in all 4 stores were kept at the headquarters of the business in Minot, North Dakota. Each store sent in to the headquarters a daily cash slip showing wholesale and retail cash sales, cash received on account, and cash paid out. These slips were posted in ledgers kept in Minot. During the first 3 months of each year, Mardrid Reite Davison audited the ledgers and prepared the partnership tax returns for each store.

The income of the 4 businesses for 1947 and 1948 was reported on the partnership returns as follows:

|  | Gross receipts | Cost of goods sold | Gross income | Net income |
|---|---|---|---|---|
| **1947** | | | | |
| Maytag Electric Co., Glasgow, Montana | $155,281.78 | $131,425.74 | $23,856.04 | $1,451.74 |
| Maytag Electric Co., Williston, North Dakota | 190,104.80 | 162,042.99 | 28,061.81 | 11,233.03 |
| Maytag Electric Co., Minot, North Dakota | 468,518.97 | 395,657.34 | 72,861.63 | 13,604.15 |
| Mandan Electrical Supply, Mandan, North Dakota | 298,948.72 | 265,034.54 | 33,914.18 | 8,554.72 |
| **1948** | | | | |
| Maytag Electric Co., Glasgow, Montana | $265,988.69 | $227,528.65 | $38,460.04 | $1,535.73 |
| Maytag Electric Co., Williston, North Dakota | 323,745.82 | 276,303.35 | 47,442.47 | 22,296.79 |
| Maytag Electric Co., Minot, North Dakota | 700,966.17 | 606,432.69 | 94,533.48 | 4,087.00 |
| Mandan Electrical Supply, Mandan, North Dakota | 421,631.92 | 382,358.38 | 39,273.54 | 624.58 |

The cost of goods sold figures reported in the partnership returns were determined by adding to beginning inventory the cost of merchandise bought for sale (plus freight and excise taxes; less purchase discounts, merchandise transferred, claims, and credits) and subtracting from this total the inventory remaining at the end of the year. With the exception of bad debts (not deducted because credit sales were not reported) and some bonuses earned but not paid to employees and not accrued on the books, all other expenses were deducted on the returns, below line 13, as business expenses to arrive at the ordinary net income of such businesses. No capital gains or losses were reported by any of the partnerships for any of the years involved.

None of the returns reflected a breakdown of expenses between cost of goods sold and other expenses deductible from gross income. No records were kept segregating the expenses incurred in doing repair work from the expenses incurred in selling merchandise, and none of the stores maintained a cost system of accounting from which a cost analysis of each business could be made. A breakdown of expenses in which part of an expense is allocated to cost of goods sold and part to other expenses could only be made by extensive auditing and information furnished by someone familiar with the operation of each store.

In preparing the partnership tax returns, Mardrid adjusted the sales shown in the books and reported only cash sales. The following amounts of credit sales were not reported:

|  | 1947 | 1948 |
|---|---|---|
| Maytag Electric Co., Glasgow, Montana | $17,025.67 | $10,038.43 |
| Maytag Electric Co., Williston, North Dakota | 16,095.02 | 12,150.31 |
| Maytag Electric Co., Minot, North Dakota | 28,006.07 | 24,061.52 |
| Mandan Electrical Supply, Mandan, North Dakota | 20,103.35 | 19,310.25 |

Each partner's allocable share of unreported credit sales is as follows:

| John Iverson: | 1947 | 1948 |
|---|---|---|
| Glasgow (50%) | $8,512.83 | |
| Minot (33⅓%) | 9,335.36 | |
| Mandan (50%) | 10,051.61 | |
| Williston (100%) | 16,095.02 | |
| Total | $43,994.88 | |
| Alvilda Iverson: | | |
| Minot (33⅓%) | $9,335.35 | |
| Mandan (50%) | 10,051.67 | |
| Total | $19,387.02 | |
| John and Alvilda Iverson: | | |
| Glasgow (50%) | | $5,019.22 |
| Minot (66⅔%) | | 16,041.02 |
| Mandan (100%) | | 19,310.25 |
| Williston (100%) | | 12,150.31 |
| Total | | $52,520.80 |
| Mardrid Davison: | | |
| Glasgow (50%) | $8,512.83 | $5,019.21 |
| Minot (33⅓%) | 9,335.35 | 8,020.51 |
| Total | $17,848.18 | $13,039.72 |

Each partner's allocable share of partnership gross income, as stated in the partnership returns, together with his income from other sources, is as follows:

| John Iverson: | 1947 | 1948 |
|---|---|---|
| Glasgow (50%) | $11,928.02 | |
| Minot (33⅓%) | 24,287.21 | |
| Mandan (50%) | 16,957.09 | |
| Williston (100%) | 28,061.81 | |
| Other income | 167.52 | |
| Total | $81,401.65 | |
| Alvilda Iverson: | | |
| Minot (33⅓%) | $24,287.21 | |
| Mandan (50%) | 16,957.09 | |
| Other income | 4,150.27 | |
| Total | $45,394.57 | |
| John and Alvilda Iverson: | | |
| Glasgow (50%) | | $19,230.02 |
| Minot (66⅔%) | | 63,022.32 |
| Mandan (100%) | | 39,273.54 |
| Williston (100%) | | 47,442.47 |
| Other income | | 6,215.84 |
| Total | | $175,184.19 |
| Mardrid Davison: | | |
| Glasgow (50%) | $11,928.02 | $19,230.02 |
| Minot (33⅓%) | 24,287.21 | 31,511.16 |
| Other income | 252.25 | 540.00 |
| Total | $36,467.48 | $51,281.18 |

On their individual income tax returns for 1947 and 1948, each of the petitioners listed the net income each received from the partnerships and his respective total income received from all sources, including stock dividends, rent, and farm income, as follows:

|  | 1947 | | |
|---|---|---|---|
|  | John Iverson | Alvilda Iverson | Mardrid Davison |
| Maytag Electric Co., Glasgow, Montana | $725.87 | ----------- | $725.87 |
| Maytag Electric Co., Williston, North Dakota | 2,483.03 | | |
| Maytag Electric Co., Minot, North Dakota | 4,534.71 | $4,534.72 | 4,534.72 |
| Mandan Electrical Supply, Mandan, North Dakota | 4,277.36 | 4,277.36 | |
| Total partnership income | $12,020.97 | $8,812.08 | $5,260.59 |
| Total income | $12,188.49 | $11,772.98 | $5,419.80 |

|  | 1948 | |
|---|---|---|
|  | John and Alvilda Iverson | Mardrid Davison |
| Maytag Electric Co., Glasgow, Montana | $767.86 | $767.87 |
| Maytag Electric Co., Williston, North Dakota | 13,996.79 | |
| Maytag Electric Co., Minot, North Dakota | 2,724.67 | 1,362.33 |
| Mandan Electrical Supply, Mandan, North Dakota | 624.58 | ----------- |
| Total partnership income | $18,113.90 | $2,130.20 |
| Total income | $21,003.94 | $2,460.33 |

The percentage of each partner's share of omitted credit sales to his share of partnership gross income as stated in the partnership returns plus other income is as follows:

|  | Gross income | Omitted sales | Percentage |
|---|---|---|---|
| *1947* | | | |
| John Iverson | $81,401.65 | $43,994.88 | 54.05 |
| Alvilda Iverson | 45,394.57 | 19,387.02 | 42.71 |
| Mardrid Davison | 36,467.48 | 17,848.18 | 48.94 |
| *1948* | | | |
| John and Alvilda Iverson | $175,184.19 | $52,520.80 | 30.50 |
| Mardrid Davison | 51,281.18 | 13,039.72 | 25.42 |

The percentage of each partner's share of omitted credit sales to the total income stated in his individual return is as follows:

|  | Total income | Omitted sales | Percentage |
|---|---|---|---|
| *1947* | | | |
| John Iverson | $12,188.49 | $43,994.88 | Over 100 |
| Alvilda Iverson | 11,772.98 | 19,387.02 | Over 100 |
| Mardrid Davison | 5,419.80 | 17,848.18 | Over 100 |
| *1948* | | | |
| John and Alvilda Iverson | $21,003.94 | $52,520.80 | Over 100 |
| Mardrid Davison | 2,460.33 | 13,039.72 | Over 100 |

The notices of deficiency covering the years 1947 and 1948 were issued on January 30, 1953. This date is more than 3 but less than 5 years after the filing of petitioners' returns for the years 1947 and 1948. No waivers of the statute of limitations were filed by any of the taxpayers for the years 1947 and 1948.

Petitioner John Iverson died on August 23, 1953. On March 29, 1954, Mardrid Reite Davison and Gladys Sorensen, co-executrices of the Estate of John Iverson, were substituted as petitioners in the place of the deceased.

### OPINION.

No deficiency having been determined against petitioners John and Alvilda Iverson for the year 1949, we have no jurisdiction with respect to the income tax of those petitioners for that year. *F. A. Gillespie Trust*, 21 T. C. 739.

The proceedings involving the taxable years 1947 and 1948 are barred by the 3-year statute of limitations unless petitioners in each year omitted from "gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return," in which event the 5-year statute is applicable. Sec. 275 (a) and (c), I. R. C. 1939.[2] The burden of establishing the applicability of section 275 (c) is on the respondent.

Petitioners derived most of their income during the years in question from 4 stores engaged in the business of selling and repairing electrical appliances. However, in arriving at the amount of gross income attributable to each business in 1947 and 1948, petitioners failed to include the credit sales of the business. The question for decision is whether these unreported amounts constitute properly includible omissions from gross income which exceed 25 per cent of the amounts of gross income stated in petitioners' returns.

It has been held that the *net* income of a partnership distributable to the partners is a part of their gross income for purposes of section 275 (c). *L. Glenn Switzer*, 20 T. C. 759, 768, remanded by stipulation (C. A. 9, 1954). Under the rule of that case the term "gross income stated in the return" does not include partnership gross income stated in a partnership return but only applies to the gross income stated in

---

[2] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276—

(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

* * * * * * *

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

the individual return, including the partner's distributive share of partnership net income. Acknowledging awareness of that case, both respondent and petitioner argue, however, that the term "gross income stated in the return" includes the individual partner's allocable share of the gross income of the partnership as shown by the partnership return. Under this theory, the taxpayer's proportionate share of the partnership's *gross* income, as distinguished from his share of *net* income, is added to any other items of gross income reported by the taxpayer in his individual return to determine the "amount of gross income stated in the return." It is not necessary, however, to resolve the conflict between the two theories in the instant case, since, under either view, petitioners here have omitted from gross income amounts in excess of 25 per cent of the amount stated in their returns.

Respondent has established by uncontradicted evidence that credit sales properly includible in gross income were omitted from the gross receipts of the 4 businesses. We have set forth in our findings the amounts of credit sales unreported by the partnership in the years 1947 and 1948, and have listed the amounts of gross income reported by petitioners in their individual returns and by the businesses in the partnership returns. A comparison of the unreported credit sales figures with the individual returns discloses that each petitioner's proportionate share of the omitted amounts is far in excess of 25 per cent of the gross income stated in each corresponding individual return. Thus, under the rule of the *Switzer* case the required percentage of omitted gross income is clearly established. Under the theory that the "gross income stated in the return" of a partner includes a proportionate share of the partnership gross income, the result is the same. If each petitioner's allocable share of the gross income reported in the partnership returns is added to his other income and compared with his share of the omitted credit sales figures, the latter amount in every instance exceeds 25 per cent of the reported gross income computed by this method. Consequently, we hold that for the years 1947 and 1948 respondent has established that petitioners omitted from gross income amounts properly includible therein which are in excess of 25 per cent of the amounts of gross income stated in the returns. It therefore follows that the notices of deficiency, which were mailed within 5 years after the returns were filed, were timely.

Petitioners' attempt to decrease the amounts of omitted gross income by increasing the cost of goods sold figures stated in the returns must be rejected. Petitioners do not claim that the cost of goods sold figures were understated because certain costs and expenses were never reflected in the returns. Rather, they urge that expenses deducted by them as "deductions" from gross income should be shifted to cost of goods sold and thereby increase that figure. Even assuming, however,

that certain expense items claimed in the partnership returns as "deductions" were properly a part of the "cost of goods sold" figures reported in the returns, such evidence is immaterial to any issue in this case. Section 275 (c) clearly provides that the amount of gross income *stated in the return* is the controlling figure. The taxpayer is bound by that statement, and respondent is not obligated to change that statement by a reaudit or revision of the return. *O'Bryan* v. *Commissioner*, 148 F. 2d 456, 459; *Carew* v. *Commissioner*, 215 F. 2d 58 (C. A. 6, 1954), affirming a Memorandum Opinion of this Court. The gross profit originally reported in a return may not be changed by an attempted adjustment of items in the cost of goods sold column, *H. Leslie Leas*, 23 T. C. 1058, particularly where, as here, petitioners' books and records do not contain the information necessary for such adjustments, and such adjustments would not only require extensive auditing but the supplying of information by someone thoroughly familiar with the operation of each store. Accordingly, petitioners may not defeat the application of section 275 (c) herein by revising the gross income figures reported by them in their original returns.

*Lois Seltzer*, 21 T. C. 398, cited by petitioners in support of their contention that respondent must prove the amount of cost of goods sold as well as the amount of gross income omitted, is clearly distinguishable. In that case, the alleged omission from gross income resulted from the sale of a capital asset and the Government failed to prove the adjusted basis of the property sold. In the instant case, no basis question exists and the amounts of omitted gross income were established by uncontradicted evidence.

*Decisions will be entered under Rule 50.*